239 N.W.2d 823 (1976)
Walt SMALL, Plaintiff-Appellee,
v.
BURLEIGH COUNTY, a political Subdivision of the State of North Dakota, and the Board of County Commissioners for Burleigh County, North Dakota, Defendants-Appellees,
and
A. G. Golden, Intervenor-Appellant,
Chris Yegen, Intervenor.
Civ. No. 9183.
Supreme Court of North Dakota.
March 12, 1976.
*824 Sperry & Schultz, Bismarck, for Walt Small, plaintiff and appellee; argued by Alfred C. Schultz, Bismarck.
Fleck, Mather, Strutz & Mayer, Bismarck, for A. G. Golden, intervenor and appellant; argued by Russell R. Mather, Bismarck.
ERICKSTAD, Chief Justice.
On the 20th of October, 1975, A. G. Golden, one of the intervenors in an action brought by the plaintiff, Walt Small, against Burleigh County and the County Commissioners of Burleigh County, filed a notice of appeal with the Clerk of the District Court of Burleigh County, from an order of the District Court dated the 16th day of October, 1975, denying a motion of the defendants and intervenors in the said action for an order vacating and relieving the defendants and intervenors from the *825 application of the judgment on remand entered pursuant to the mandate of our court in Small v. Burleigh County, 225 N.W.2d 295 (N.D.1974).
The pertinent part of the motion to vacate the judgment, which was dated the 5th day of May, 1975, reads:
"COME NOW the above named defendants and intervenors and move the court pursuant to Rule 60(b)(5) and (6) of the North Dakota Rules of Civil Procedure for its order vacating and relieving the defendants and intervenors from the application of the Judgment in the captioned action on the grounds and for the following reasons:
"That it is no longer equitable that said judgment should have prospective application for the reason that said judgment is based upon the statutes and laws of the State of North Dakota as they existed prior to March 22, 1975.
"That since the decree and judgment in said action, House Bill No. 1082, approved March 22, 1975, has been enacted which materially changes and affects application of said judgment and enforcement of said judgment would result in inequities to the defendants and intervenors and would create hardships on the defendant and intervenors and further would be contrary to the law as is now enacted."
Attached to and made a part of the motion to vacate was a copy of the "Judgment on Order for Remittitur from Supreme Court" and a copy of House Bill No. 1082 of the 1975 session of the State Legislature.
The pertinent parts of House Bill No. 1082 read:
"SECTION 1. AMENDMENT.) Section 24-06-28 of the North Dakota Century Code is hereby amended and reenacted to read as follows:
"24-06-28. OBSTRUCTION OF SECTION LINES PROHIBITEDEXCEPTIONCERTAIN FENCES NOT CONSIDERED OBSTRUCTIONSPENALTY.) No person shall place or cause to be placed any permanent obstruction or stones or rubbish within thirty-three feet of any section line, unless he first shall secure written permission from the board of county commissioners or the board of township supervisors, as the case may be. Such permission shall be granted only where the topography of the land along such section line is such that in the opinion of the board of county commissioners or board of township supervisors, as the case may be, the construction of a road on the section line is impracticable. The provisions of this section shall not prohibit construction of fences along or across section lines if gateways or cattleguards, constructed pursuant to chapter 24-10, are provided where fences cross the lines, but such fences shall be subject to removal as provided in section 24-06-30. Where an issue arises as to whether the situation is better served by the installation of a gateway or a cattleguard, the ultimate decision will be left to the board of county commissioners or board of township supervisors, as the case may be. The construction of fences pursuant to the provisions of this section shall not be considered an obstruction of section lines and any person who damages any fence or who opens and fails to close any gate constructed under the provisions of this section is guilty of an infraction.
"SECTION 2. AMENDMENT.) Section 24-06-30 of the North Dakota Century Code is hereby amended and reenacted to read as follows:
"24-06-30. REMOVAL OF FENCES NOTICECOST.) When a public highway is opened along any section line within the state, the board of county commissioners or the board of township supervisors, as the case may be, shall notify the owner of adjacent property to remove any fences within thirty-three feet of said section line in the manner provided for notice to remove stones or rubbish. If the owner of adjacent property shall fail to remove the same within thirty days after such notice has been *826 given, the board of county commissioners or the board of township supervisors, as the case may be, shall cause such fences to be removed, and the cost thereof shall be returned and entered the same as taxes against the property and shall be paid in the same manner as taxes are paid.
"SECTION 3. EMERGENCY.) This Act is hereby declared to be an emergency measure and shall be in full force and effect from and after its passage and approval." S.L.1975, Ch. 242 (approved March 22, 1975).
In the "Judgment on Order for Remittitur" it was indicated that this court had directed the removal of the intervenors' fences.
In the opinion of this court in Small this court, speaking through Justice Vogel for the majority, said:
"We hold that congressional section lines outside the limits of incorporated cities, unless closed by proceedings permitted by statute, are open for public travel without the necessity of any prior action by a board of township supervisors or county commissioners.
"The judgment is reversed and the case is remanded with instructions to direct the removal of the intervenors' fences." Small v. Burleigh County, supra, 225 N.W.2d at 300 (N.D. Dec. 31, 1974), reh. den., id. (Jan. 30, 1975).
With this information before us, we must decide whether the trial court erred in denying the motion. We conclude that the trial court did not commit error in denying the motion.
The pertinent facts in this case are that Small and his wife and children reside on a farmstead approximately two and one-half miles south and west of the southwest corner of section 30 in Apple Creek Township in Burleigh County. Small irrigates part of section 30 and upon that land produces alfalfa for his cattle which he must, during the haying season, transport over two miles of section line roadway which lies between sections 35 and 36 and 25 and 36 of Lincoln Township, upon which section lines is constructed a barbwire fence which lies within thirty-three feet of the section lines and which section lines are traversed by five or, depending upon the season of the year, six barbwire gates.
In the first proceeding Small sought an order from the county commissioners directing the intervenors to remove the fence and gates. When the commissioners declined to issue such an order, Small appealed to the District Court. In District Court the intervenors contended that Small had an alternate route, although it was five miles in length, over which he could travel upon other section lines to his land without interference. When the trial court concluded that section lines are not open for travel unless so ordered by either the county commissioners or the township board of supervisors, depending upon whether the township was organized or not, Small appealed to this court. This court remanded the case with instructions to direct the removal of the fences, concluding, as we have earlier indicated, that all section lines are open for travel without the necessity of action by the county commissioners or the township board of supervisors.
On appeal before this court, Golden contends the passage of House Bill No. 1082, in the 1975 session of the Legislature, makes it inequitable to enforce the direction contained in our opinion requiring the removal of the section line fences and gates.
Golden relies on Rule 60(b) of the North Dakota Rules of Civil Procedure, the pertinent parts of which read:
"(b) MistakesInadvertenceExcusable neglectNewly discovered evidence Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order in any action or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for *827 a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment or order was entered in the action or proceeding. * * *" Rule 60(b), N.D.R.Civ.P.
Golden stresses parts (5) and (6) of Rule 60(b). He asserts that the trial court abused its discretion in failing to grant the motion and contends that Rule 60(b)(5) supports the motion as "it no longer is equitable that the judgment should have prospective application." He asserts that Rule 60(b)(6) goes further and applies where there is "any other reason justifying relief from the operation of the judgment."
He argues that when the Legislature changes the applicable law to a point where it relieves the party from obligations imposed by a court decision which relies in part upon prior law, the party is entitled to relief under Rule 60(b). The trial court in its order denying the motion to vacate, held that House Bill 1082 did not "materially change and affect the application of the judgment." We are inclined to agree with the trial court.
The pertinent language of Section 24-06-28, N.D.C.C., as amended by House Bill 1082, reads:
"The provisions of this section shall not prohibit construction of fences along or across section lines [if gateways or cattle guards, constructed pursuant to chapter 24-10, are provided where fences cross the lines,] but such fences shall be subject to removal as provided in section 24-06-30."
The bracketed material is the language added to the section by House Bill 1082.
The pertinent sections of Chapter 24-10 follow:
"24-10-01. Cattle guardsHow permitted.Whenever the erection of cattle guards is necessary to complete an inclosure which includes land on both sides of any highway in the state, except a highway which has been designated as part of the state highway system, the board of county commissioners, if the cattle guard is to be erected across a county road, or the board of township supervisors, if the cattle guard is to be erected across a township road, may issue permission to any person, firm, or corporation to erect a cattle guard and gateway across said highway upon the conditions hereinafter prescribed.
"24-10-02. Cattle guardsHow constructed Effect.Before any cattle guard and gateway shall be erected across any highway as authorized in section 24-10-01, the board of county commissioners or board of township supervisors, as the case may be, shall approve written specifications of said cattle guard and gateway, such specifications to be filed with the county auditor, if approved by the board of county commissioners, and with the township clerk, if approved by the board of township supervisors. The specifications shall include specifications for warning signs to be placed approximately three hundred feet from and plainly visible to persons approaching said cattle guard upon the highway. A cattle guard shall be so constructed as to permit the passage of motor vehicles through and over the same. No cattle guard shall be erected upon any highway in this state unless there also is provided adjacent thereto an ample gateway in which shall be erected a gate which may be opened easily and closed by the public. Within the limits of an inclosure so completed by authorized cattle guards erected in accordance with such specifications *828 livestock shall be permitted to run at large without liability for being upon such highway." N.D.C.C.
It is our view that those sections require permission from either the board of county commissioners or the board of township supervisors, as the case may be, before anyone may construct cattle guards and gateways across or upon any highway. There is no evidence in the record before us that permission was ever sought or received by the intervenors to construct fences, cattle guards, or gateways on the section lines. What the constitutional significance may be in permitting such structures on section lines we are not asked to decide today. Accordingly, we do not find it inequitable under subsection (5) of Rule 60(b) that the judgment in the instant case be carried out, nor do we find any justification under subsection (6) of Rule 60(b) for vacating the judgment.
In Hefty v. Aldrich, 220 N.W.2d 840, 846 (N.D.1974), we said that Rule 60(b)(6) could be used where the grounds for vacating a judgment or order were within any of the subdivisions of (1) through (5), but that something more or extraordinary justifying relief from the operation of the judgment or order must be present, if subsection (6) alone is relied upon. As in City of Wahpeton v. Drake-Henne, Inc., 228 N.W.2d 324 (N.D.1975), we find nothing sufficiently extraordinary to justify vacating the judgment in this case.
Notwithstanding that we have made an inquiry into the merits of this case and have found no basis therein for setting aside the trial court's order denying the Rule 60(b) motion, there is another reason why the trial court's order should be sustained, and that relates to the issue as we stated it earlier herein.
In Brennan v. Midwestern United Life Insurance Co., 450 F.2d 999 (7th Cir. 1971), the court stated this rule:
"Generally, in reviewing a lower court's denial of a motion under Rule 60(b), our function is not to determine whether the court was substantively correct in entering the judgment from which relief is sought but is limited to deciding whether the judge abused his discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown in a timely manner. See, e. g., Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950); Wojton v. Marks, 344 F.2d 222 (7th Cir. 1965)." Brennan v. Midwestern United Life Insurance Co., supra, 450 F.2d at 1003.
In the instant case, there is no question concerning the timeliness, but there is a question concerning the sufficiency of the grounds for disturbing the finality of the judgment. We conclude that there are not sufficient grounds for disturbing the finality of the judgment. To grant the motion to vacate the judgment after the appeal procedures have been fully utilized and the judgment has become final would encourage our people to ignore the law as it exists and, only when caught up in it, to seek its change in the Legislature, hoping thereby to make legal what was found to be illegal through the judicial process. Instead of encouraging such an attitude, we in the judiciary should be encouraging our people to comply with the law until it is changed by the Legislature.
In support of his contention that the judgment should be vacated and the order of the trial court denying his motion to vacate should be set aside, under the third ground of relief from a final judgment under Rule 60(b)(5) which is that "it is no longer equitable that the judgment should have prospective application", Golden refers us to Pennsylvania v. Wheeling and Belmont Bridge Co., 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855), 6 Moore's Federal Practice, ¶ 60.24(4) at 337 (2d ed. 1974), and Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949). Lest it should be assumed that we did not consider them, we shall discuss them briefly at this point.
In the latter case, Klapprott filed a motion with the United States District Court *829 asking it to vacate a default judgment which revoked his citizenship and cancelled his naturalization certificate. Because the motion was made more than four years after the entry of the judgment, the district court found him guilty of wilful and inexcusable neglect and dismissed the petition because of the defendant's lathes. The Circuit Court of Appeals affirmed. On January 17, 1949, the Supreme Court, through Justices Black, Douglas, Murphy, Rutledge, and Burton reversed the Circuit Court of Appeals and remanded the cause to the district court with instructions to set aside the default judgment and grant the petitioner a hearing on the merits raised by the denaturalizing complaint. On April 4, 1949, the judgment of the Supreme Court was modified by a majority of the court with Justices Black, Douglas, Murphy, and Rutledge dissenting from the modification. The judgment was amended to read:
"`The judgment of the Court of appeals is reversed and the cause is remanded to the District Court with directions to receive evidence on the truth or falsity of the allegations contained in petitioner's petition to vacate the default judgment entered in the denaturalization proceedings.'" Klapprott v. United States, supra, 335 U.S. at 631, 69 S.Ct. at 398.
Although the members of the United States Supreme Court were not in agreement relative to the issue of whether a default judgment should be entered in a denaturalization proceeding without proof of the charges upon which the judgment was entered, the court was apparently in agreement in concluding that the facts which the petitioner asserted justified consideration of a motion to vacate a judgment under Rule 60(b). In justifying a reversal of the Circuit Court and a vacation of the default judgment, Justice Black in finding a basis for applying Rule 60(b), said:
"The basis of his petition was not that he had neglected to act in his own defense, but that in jail as he was, weakened from illness, without a lawyer in the denaturalization proceedings or funds to hire one, disturbed and fully occupied in efforts to protect himself against the gravest criminal charges, he was no more able to defend himself in the New Jersey court than he would have been had he never received notice of the charges. Under such circumstances petitioner's prayer for setting aside the default judgment should not be considered only under the excusable neglect, but also under the `other reason' clause of 60(b), to which the one year limitation provision does not apply.

"Fourth. Thus we come to the question whether petitioner's undenied allegations show facts `justifying relief from the operation of the judgment.' * * * In simple English, the language of the `other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." Id., 335 U.S. at 614-615, 69 S.Ct. at 390.
We are convinced that the facts in Klapprott are so different from the facts in this case that Klapprott has no application to this case. Without attempting to point out in detail the facts upon which this case may be distinguished, we think it significant to note that Klapprott involved a motion to vacate a default judgment which was entered without the submission of evidence, whereas in the instant case, the matter has been heard not only in the trial court but also in the appellate court.
Let us now consider briefly Pennsylvania v. Wheeling and Belmont Bridge Co., supra.
In Wheeling and Belmont Bridge Co., a case decided by the United States Supreme Court on April 21, 1856, a majority of the court vacated a decree which it rendered in May 1852 which declared a certain bridge to be an obstruction of the free navigation of the Ohio River, and directed that the obstruction be removed, either by elevating the bridge to a height designated, or by abatement. The majority of the court vacated its previous decree because on August 31, 1852, before the execution of the Supreme *830 Court decree, the Congress of the United States passed an act which declared that certain bridges which had been constructed by the company were lawful structures in their existing condition and designated them as post roads for the passage of the mail of the United States.
The pertinent language of the Act reads as follows:
"* * * `that the bridges across the Ohio River at Wheeling, in the State of Virginia, and at Bridgeport in the State of Ohio, abutting on Zane's Island, in said river, are hereby declared to be lawful structures, in their present position and elevation, and shall be so held and taken to be, anything in any law or laws of the United States to the contrary, notwithstanding.'" Pennsylvania v. Wheeling and Belmont Bridge Co., supra, 59 U.S. (18 How.) at 437, 15 L.Ed. at 439-440 (1855).
It should be readily discernible that Wheeling and Belmont Bridge Co. is distinguishable from the instant case. In the first place, the Congress of the United States, by specific legislation, declared specific bridges, in their existing condition, to be legal. In the instant case the Legislature of the State of North Dakota, has not declared the specific fences and gates of the movant to be legal. The North Dakota law merely provides a procedure whereby a landowner may attempt to secure permission to erect certain structures on a section line or within thirty-three feet of a section line.
It is interesting to note that in Wheeling and Belmont Bridge Co., a strong dissent was filed by Justice McLean to Justice Nelson's majority opinion, in which he expressed the view that the law which purported to make the bridges legal was unconstitutional and void. He would have carried into effect the final decree of the Supreme Court which required the removal of the obstruction. Justice Grier, although he concurred in the result of the majority opinion, concurred with Justice McLean in his view that the Congress could not annul or vacate any decree of that court and concluded that such an assumption of power by Congress was without precedent, and as a precedent for the future was a dangerous example. Justice Wayne was of the opinion that the Act of Congress did not relieve the bridge company from the operation of the judgment of the Supreme Court.
In light of the differences in facts and the vintage of the decision, it having been decided in 1856, we do not believe that Wheeling and Belmont Bridge Co. is precedent for the action which Golden asks this court to take today.
We see nothing in 6 Moore's Federal Practice, ¶ 60.24(4), which commences on page 337, that convinces us that we should vacate the judgment of this court on remand.
Accordingly, we conclude that the trial court did not abuse its discretion in denying the motion to vacate the judgment on remand entered pursuant to the mandate of this court. The order of the trial court is therefore affirmed.
SAND, PAULSON, PEDERSON and VOGEL, JJ., concur.