DAKOTA BANK AND TRUST CO. OF
FARGO, Plaintiff and Appellant,

v.

Charles FUNFAR, Defendant
and Appellee.

Civ. No. 880257.

Supreme Court of North Dakota.

June 27, 1989.

Lamb, McNair, Larson & Carlson, Ltd.,
Fargo, for plaintiff and appellant; argued
by Bruce H. Carlson.

Gackle, Johnson, Rodenburg & Trader, Fargo, for defendant and appellee; argued by Bruce D. Johnson.

LEVINE, Justice.

Dakota Bank and Trust Co. of Fargo [Bank] appeals from a district court judgment dismissing its action against Charles Funfar to enforce an alleged oral guaranty of a promissory note secured by a real estate mortgage. We affirm.

On June 30, 1983, Dr. Kevin and Yvonne Quinn executed a $156,150 promissory note to the Bank to finance the purchase of a home in the Prairiewood Addition of Fargo. The note was secured by a mortgage subject to the provisions of the Short–Term Mortgage Redemption Act, Chapter 32–19.-1, N.D.C.C. Pursuant to the mortgage agreement, the Quinns established an escrow account with the Bank for the payment of real estate taxes, assessments, hazard insurance and mortgage insurance. The monthly payments for the escrow account alone totaled $366.47.

In 1984, Funfar, a general contractor specializing in the construction of residential housing, agreed to build a custom home for the Quinns in Briarwood for $295,000. To facilitate the closing of the Briarwood transaction, Funfar agreed to take the Prairiewood Addition property in trade for a $185,000 credit on the purchase price of the Briarwood property. Jerry Nelson, acting as the real estate agent, contacted Ken Krajsa, a loan officer with the Bank, regarding the proposed transfer of the property because the Quinn mortgage contained a due-on-sale clause. Krajsa told Nelson that the Bank had no objections to the transfer. On November 16, 1984, the Quinns conveyed the Prairiewood Addition property to Funfar by warranty deed. The deed stated that the property was subject to the Bank's mortgage, which "GRANTEE ASSUMES AND AGREES TO PAY." However, no loan assumption documents were executed by Funfar and the Bank.

Funfar began making payments to the Bank on the note and the escrow account. In January 1985, Funfar contacted Krajsa and requested that he be allowed to discontinue making the escrow payments in order to reduce his cash outflow while the Prairiewood Addition property was for sale. According to Krajsa, Funfar promised to continue making principal and interest payments to the Bank and to keep the taxes, assessments, and hazard insurance current. The Bank also agreed to eliminate the escrow requirement. The Bank thereafter canceled the mortgage insurance.

Funfar continued to make the monthly principal and interest payments through March 1987. At that time, Funfar attempted to negotiate a lower interest rate with the Bank but the Bank would not agree. Funfar thereafter stopped making principal and interest payments. Funfar did not pay the taxes and assessments on the property after the escrow account was released.

The Bank brought a foreclosure action against Funfar. The Quinns were not parties to the foreclosure action and a default judgment of foreclosure was entered on September 30, 1987. The Bank also brought this action alleging that Funfar had "unconditionally guaranteed" payment of the promissory note and payment of all real estate taxes and assessments accruing against the property. Following a bench trial, the court determined that Funfar was not a guarantor, but that he had assumed the Quinns' mortgage debt and thereby became the principal debtor. Because Funfar was the principal debtor rather than a guarantor, the trial court concluded that he could not be sued directly on the debt by virtue of the anti-deficiency judgment provision of the Short–Term Mortgage Redemption Act, § 32–19.1–07, N.D.C.C. *Compare Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640 (N.D.1980) [guarantors not afforded protection of anti-deficiency judgment statutes]. The Bank appealed.

The Bank asserts that the trial court erred in determining that Funfar had assumed the mortgage debt and was not a guarantor. A "guaranty" is "a promise to answer for the debt, default, or miscarriage of another person." Section 22–01–01(1), N.D.C.C. On the other hand, one

who assumes a mortgage debt becomes primarily liable for the debt. *Morris v. Twichell,* 63 N.D. 747, 249 N.W. 905, 909 (1933). The trial court's determination of whether, under the circumstances, statements made by the parties constitute an oral guaranty or assumption of debt is a finding of fact which we will not disturb unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *Baker Mfg. Co. v. Kramer Sheet Metal,* 371 N.W.2d 149, 152 (N.D. 1985) [oral guaranty]; *Security State Bank v. Schultz,* 350 N.W.2d 40, 42 (N.D. 1984) [oral assumption of debt]. The record amply supports the trial court's finding that Funfar assumed, rather than guaranteed, the Quinns' mortgage debt.

The warranty deed conveying the property to Funfar expressly provided that Funfar "ASSUMES AND AGREES TO PAY" the mortgage debt. The Bank approved the conveyance and did not exercise its remedy under the due-on-sale clause. Although no loan assumption documents were executed, the Bank continuously treated Funfar as the principal debtor after December 1984. Funfar, rather than the Quinns, received the monthly statements from the Bank for installments of principal and interest. The Bank, at Funfar's request, eliminated the escrow for taxes, assessments, and insurance without consulting the Quinns. Negotiations to reduce the interest rate on the note did not involve the Quinns. When payments ceased, the Bank brought a foreclosure action against Funfar which went to judgment in its favor. These circumstances clearly support the trial court's finding that Funfar had assumed the Quinns' mortgage debt.

■ The Bank asserts, however, that Funfar's actions constitute a guaranty of payment under the "leading object" rule embodied in § 22-01-05(2), N.D.C.C.[1] The Bank's reliance on the "leading object" rule is misplaced. The "leading object" rule is not a test for gauging whether, under the circumstances, an oral guaranty has been given. Rather, the rule is used for determining whether an oral guaranty is excepted from the statute of frauds and, consequently, need not be in writing to be enforced. The cases relied on by the Bank demonstrate that an oral guaranty must be in existence before the "leading object" rule is germane. *See Baker Mfg. Co. v. Kramer Sheet Metal, supra; Ned Nastrom Motors v. Nastrom–Peterson–Neubauer,* 338 N.W.2d 64, 69 (N.D.1983); *State Bank of Towner, Inc. v. Rauh,* 288 N.W.2d 299, 307 (N.D.1980); *Austford v. Smith,* 196 N.W.2d 413, 416 (N.D.1972). Because the trial court's finding of no oral guaranty is not clearly erroneous, the "leading object" rule is inapplicable.

The Bank also asserts that Funfar, in exchange for the Bank's agreement to forego the monthly escrow payments, entered into a new and "separate" contract with the Bank, apart from the note and mortgage, to pay the real estate taxes and assessments. The Bank contends that, as a result of its reliance on Funfar's reputation and promises to continue making payments of principal, interest, taxes, and as-

---

1. Section 22-01-05(2), N.D.C.C., provides:

"*22–01–05. When a guaranty need not be in writing.*—A promise to answer for the obligation of another in any of the following cases is deemed an original obligation of the promisor and need not be in writing:

\*   \*   \*   \*   \*   \*

"2. When the creditor parts with value or enters into an obligation in consideration of the obligation in respect to which the promise is made, in terms or under circumstances which render the party making the promise the principal debtor and the person in whose behalf it is made his surety."

In *Glock v. Hillestad,* 85 N.W.2d 568, 575 (N.D.1957), this court explained:

"'It is difficult, if not impossible, to formulate a rule by which to determine in every case whether a promise relating to the debt or liability of a third person is or is not within the statute; but, as a general rule, when the leading object of the promise or agreement is to become guarantor or surety to the promisee, for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after, or at the time with the promise of the principal, is within the statute, and not binding unless evidenced by writing. On the other hand, when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.'" [Quoting *Kampman v. Pittsburgh Contracting & Engineering Co.,* 316 Pa. 502, 175 A. 396, 398 (1934) ].

sessments when due, it canceled the escrow account and mortgage insurance and was damaged in excess of $11,000 for unpaid taxes which remain due on the property and $30,000 for its failure to receive payment on the mortgage insurance policy. The Bank asserts that the trial court's finding to the effect that the Bank did not change its position to its financial detriment by releasing the escrow account is clearly erroneous and that the "separate" agreement is enforceable notwithstanding the anti-deficiency judgment statutes.

Although the finding that the Bank did not change its position to its detriment may well be clearly erroneous, it is of no consequence in this case because enforcement of the agreement would nevertheless violate the anti-deficiency judgment statutes.

The import of our anti-deficiency judgment statutes is clear. Except under very limited circumstances, a "mortgagee ... shall not be permitted or authorized either before or after the rendition of a judgment for the foreclosure of a real estate mortgage ... to bring *any action* in any court in this state for the recovery of *any part of the debt secured by the mortgage* ... in excess of the amount by which such debt and the costs of the action exceed the fair value of the mortgaged premises." Section 32–19–06, N.D.C.C. [Emphasis added.] Under § 32–19.1–07, N.D.C.C., of the Short–Term Mortgage Redemption Act, which is applicable in this case, deficiency judgments are prohibited altogether. In recognition of this clear legislative policy against deficiency judgments in real estate litigation, we have rejected numerous attempts to circumvent the plain intent of these statutes. *See, e.g., Hagan v. Havnvik,* 421 N.W.2d 56, 60–61 (N.D.1988); *Schiele v. First National Bank of Linton,* 404 N.W.2d 479, 483–485 (N.D.1987); *Mischel v. Austin,* 374 N.W.2d 599, 600 (N.D.1985); *H & F Hogs v. Huwe,* 368 N.W.2d 553, 555–556 (N.D.1985).

■ The anti-deficiency judgment statutes limit the ability of the mortgagee to recover a deficiency judgment for "any part of the debt secured by the mortgage...." Section 32–19–06, N.D.C.C.

*See also* § 32–19.1–04(1), N.D.C.C. ["indebtedness secured by the mortgage"]; § 32–19.1–02, N.D.C.C. [incorporates general foreclosure law where not inconsistent with provisions of Ch. 32–19.1]. Under paragraph 2 of this mortgage, Funfar was obligated to pay monthly, in addition to installments of principal and interest, a sum equal to one-twelfth of the yearly taxes, assessments, and premium installments for mortgage insurance. This provision clearly placed the primary responsibility for taxes, assessments, and mortgage insurance upon Funfar. Paragraph 7 of the mortgage provides that if the borrower fails to perform any of the covenants and agreements contained in the mortgage, the lender may "disburse such sums and take such action as is necessary to protect Lender's interest." The mortgage further states that in the event the lender disburses such funds, those amounts, with interest, "shall become additional indebtedness of Borrower secured by this Mortgage." Thus, if the Bank had paid the taxes, assessments, and premium installments for mortgage insurance when Funfar failed to do so, there is no question that the amounts expended would have constituted a part of the debt secured by the mortgage and would therefore be subject to the anti-deficiency judgment statutes. *See generally* 9 G. Thompson, Commentaries on the Modern Law of Real Property § 4746, at p. 387 (1958).

The Bank did not expend funds to pay for taxes, assessments, and mortgage insurance, but canceled the insurance and released Funfar from the escrow requirements. The Bank contends it canceled the insurance and released the escrow account because of Funfar's promise to continue to pay the principal and interest installments and his "separate" agreement to pay taxes and assessments as they became due. However, permitting the Bank to evade the anti-deficiency judgment statutes through the guise of this "separate" agreement would exalt form over substance. The mortgage at all times remained intact as security for the payment of principal and interest. Funfar's obligations under the new, "separate" agreement are, with the

exception of principal and interest, precisely the same obligations Funfar had pursuant to the terms of the mortgage. If we were to allow the Bank to merely release Funfar from these responsibilities under the original mortgage and then allow the Bank to prevail in enforcing the simultaneous "separate" agreement, which required Funfar to do what he had already been obligated to do, "the protections afforded mortgagors by the anti-deficiency judgment statutes would be largely vitiated." *H & F Hogs v. Huwe, supra,* 368 N.W.2d at 556. We decline to sanction this attempted circumvention of the anti-deficiency judgment statutes.

The Bank also asserts that principles of equitable and promissory estoppel require that Funfar be held liable for the entire mortgage debt regardless of the anti-deficiency judgment statutes. In view of the Legislature's avowed public policy against deficiency judgments, we question whether principles of estoppel can ever serve as a basis for denying a debtor the protections afforded by the anti-deficiency judgment statutes. *See, e.g., Chemical Bank v. Belk,* 41 N.C.App. 356, 255 S.E.2d 421, 428 (1979) [doctrine of estoppel cannot deprive debtor of the right to assert North Carolina anti-deficiency judgment defense]; *cf.* § 1–02–28, N.D.C.C. However, even if estoppel principles are a proper consideration, we cannot say that the trial court erred in refusing to hold Funfar estopped from using the anti-deficiency judgment statutes in his defense where the only conduct relied upon by the Bank is Funfar's promise to do acts which were already required of him under the express terms of the mortgage agreement.

The judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.