**Violet O. BORSHEIM and George R. Borsheim, Plaintiffs and Appellees,**

v.

**O & J PROPERTIES, a partnership, consisting of R.E. Jacobsen, Charles Owan, Jr., Vernon Owan and Mitchell Owan, partners, and R.E. Jacobsen, individually, Charles Owan, Jr., individually, Vernon Owan, individually, and Mitchell Owan, individually, Defendants and Appellants.**

Civ. No. 910258.

Supreme Court of North Dakota

Feb. 28, 1992.

As Corrected March 19, 1992.

Bjella, Neff, Rathert, Wahl & Eiken, PC, Williston, for plaintiffs and appellees; argued by Charles L. Neff.

Wheeler Wolf Law Firm, Bismarck, for defendants and appellants; argued by Orell D. Schmitz, appearance by Joseph J. Cichy.

ERICKSTAD, Chief Justice.

R.E. Jacobsen, Charles Owan, Jr., Vernon Owan, and Mitchell Owan, individually and as partners of O & J Properties (hereafter Owans) appeal from the judgment of the District Court for Williams County granting Violet and George Borsheim (hereafter Borsheims) summary judgment, rescinding an agreement between the parties. We affirm in part, modify in part and remand.

The Borsheims filed this action on April 22, 1991, seeking rescission of an agreement and reinstatement of a prior judgment released pursuant to the agreement. Each of the named defendants answered separately. On May 15, 1991, the Borsheims filed a motion for summary judgment. On May 21, 1991, the defendant Vernon Owan filed a demand for change of judge. After the case was assigned to the Honorable Bert Wilson on May 22, 1991, the defendant Mitchell Owan made a demand for change of judge, seeking to disqualify Judge Wilson. On May 29, 1991, the defendants filed a motion for an extension of time in which to file a brief in response to the Borsheims' motion for summary judgment. On June 24, 1991, the Owans resisted the Borsheims' motion for

summary judgment and moved for summary judgment in their favor. On July 12, 1991, the trial court ruled that the Borsheims were entitled to summary judgment and rescission of the agreement along with reinstatement of the original judgment. Judgment was accordingly entered on July 17, 1991.[1] This appeal followed.

The facts precipitating this action arose out of a contract for deed between the Borsheims and the Owans. The Owans defaulted on the contract for deed and the Borsheims sued for, and obtained, a judgment holding each defendant jointly and severally liable for specific performance. The judgment was for $47,646.00 plus interest in the amount of $25,120.38 and costs of $968.00. Because the judgment constituted a lien on all of the Owans' real property, the Owans sought an agreement with the Borsheims whereby the judgment would be released. The parties subsequently entered into an agreement where, in exchange for the Borsheims releasing their judgment, the Owans executed a promissory note secured in part by a mortgage covering certain real property, a continuing general guaranty signed by each of the defendants whereby they jointly and severally guaranteed payment of the note and, presumably, payment of $10,000.[2]

The foregoing was ostensibly accomplished through the execution of what counsel for the Borsheims termed a master

---

1. Specifically, the trial court's judgment included in relevant part as follows:

   "ORDERED, ADJUDGED AND DECREED that plaintiffs have judgment against defendants, and each of them, for the equitable relief of reinstating that certain judgment dated December 12, 1986 entered in Civil No. 17315, docketed in the District Court, Williams County, North Dakota, and voiding that certain release of judgment dated August 10, 1987 which released the December 12, 1986 judgment in Civil No. 17315, such that the December 12, 1986 judgment shall have priority and shall attach as a lien against any and all property owned by defendants, and each of them, as of December 12, 1986, the date judgment was entered in Civil No. 17315; and it is further

   "ORDERED, ADJUDGED AND DECREED that the judgment entered in Civil No. 19737, docketed in the District Court, Williams County, North Dakota on August 3, 1989, wherein plaintiffs foreclosed on a real estate mortgage of defendants which plaintiffs had taken as partial security for releasing the December 12, 1986 judgment, is, in all things, vacated and declared null and void; and it is further

   "ORDERED, ADJUDGED AND DECREED that plaintiffs will release the mortgage foreclosed by the judgment entered in Civil No. 19737 and will return to defendants the sum of ten thousand and no/100 dollars ($10,-000.00) which defendants paid to plaintiffs as partial consideration for releasing the judgment entered December 12, 1986 in Civil No. 17315 docketed in the District Court, Williams County, North Dakota; and it is further

   "ORDERED, ADJUDGED AND DECREED that pursuant to the North Dakota Rules of Civil Procedure plaintiffs shall have judgment against the defendants, and each of them, jointly and severally, for all of plaintiffs' costs and disbursements incurred in this action, as taxed and allowed by the Court, in the sum of one hundred thirteen and 64/100 dollars ($113.64); and it is further

   "ORDERED, ADJUDGED AND DECREED that the master agreement dated June 1, 1987, the promissory note for $65,952.88 dated June 1, 1987, the mortgage dated September 4, 1987, the general continuing guaranty dated September 4, 1987 and the release of judgment dated August 10, 1987 are all declared null and void, such that the parties are to be placed in the same positions they were in on December 12, 1986, the date judgment was entered in Civil No. 17315, just as if that judgment had never been released and the parties had never made any agreement for the release of that judgment.

   "Let execution of the legal and equitable relief issue accordingly."

2. In the agreement which counsel for the Borsheims described as the master agreement, we find the following language:

   "(5) The parties agree and Judgment Creditors acknowledge receipt of the sum of $10,-000.00 which has hereto been paid by Judgment Debtors. That said $10,000.00 was paid by Judgment Debtors out of proceeds from the sale of the Rose Owan house and the Judgment Creditors acknowledge that they have executed a partial release of judgment lien releasing the lien of said judgment as to said property."

   At the summary judgment hearing before the trial court, counsel for the Borsheims stated that the $10,000 paid by the defendants was applied to the judgment prior to the agreement. At oral argument in this Court, counsel for the Borsheims said that the $10,000 was paid and deducted from the judgment prior to the agreement, but such payment was incorporated into the entire agreement. The significance of this from the standpoint of Borsheims is that therefore they assert that they did not need to offer to restore the $10,000.

agreement which set forth the parties' intent to negotiate a release of the judgment. Although this so-called master agreement was dated June 1, 1987, it was apparently signed by the individual defendants on September 4, 1987, and by the Borsheims on August 10, 1987. Both parties' statement of facts and George Borsheim's affidavit to the trial court state that on or about June 1, 1987, the Owans signed and delivered to the Borsheims a promissory note for $65,-952.88. However, we note that there is no separately executed promissory note in the record before us. The general continuing guaranty was signed by the Owans on September 4, 1987. The mortgage was signed by the Owans on September 4, 1987, and was filed in the office of the register of deeds on September 10, 1987. The release of the judgment was signed by the Borsheims on August 10, 1987.

Upon default, the Borsheims initiated two separate actions, one seeking to foreclose on the mortgage and the other to enforce the personal guarantees. In the action to foreclose the mortgage, the Borsheims did not pursue a deficiency judgment as provided by statute. A final decree of foreclosure was entered in this action on or about August 3, 1989. However, a sheriff's sale has apparently not been held pending the outcome of this action. In the action to enforce the personal guarantees, the continuing guaranty provided that each guarantor "specifically waives and releases his right to rely upon or seek protection against a deficiency judgment by virtue of any statutes or Supreme Court decisions." The district court dismissed the action to enforce the personal guarantees and, in *Borsheim v. Owan*, 467

N.W.2d 95 (N.D.1991), we affirmed the district court's dismissal, holding "that 'because of the public policy against deficiency judgments, the procedural rights granted mortgagors and vendees under the anti-deficiency judgment law cannot be contractually waived in advance of default.'" *Id.* at 98 (quoting *Brunsoman v. Scarlett*, 465 N.W.2d 162, 167 (N.D.1991)). Subsequently, the Borsheims brought this action for rescission.

■ Sections 9–09–01 through 9–09–04, N.D.C.C., provide for when and how *a party* can rescind a contract.[3] "These rules are largely codifications of the common-law rules, and are founded upon elementary principles of justice." *Swan v. Great Northern Ry. Co.*, 40 N.D. 258, 168 N.W. 657, 658 (1918). Under section 9–09–04, N.D.C.C., a person must use reasonable diligence to rescind promptly and to restore, or offer to restore to the other party everything of value he or she has received from him or her under the contract.[4] Generally, "[r]estoration of the preceding status quo is a requirement for rescission." *West v. Carlson*, 454 N.W.2d 307, 309 (N.D.1990). This requirement is founded upon the equitable principle that he who seeks equity must do equity. *Blair v. Boulger*, 358 N.W.2d 522, 523 (N.D.1984). As the Court in *Swan v. Great Northern Ry. Co.*, quoting *Home Ins. Co. v. Howard*, 111 Ind. 544, 13 N.E. 103 (1887), put it:

"One who has been led into a contract upon which he has received something of value cannot ignore the contract, however induced, and proceed in a court of law as if the relations of the parties were wholly unaffected thereby. He cannot,

---

**3.** Sections 9–09–01 through 9–09–04, N.D.C.C., set forth the requirements for unilateral rescission, also called "rescission in pais." *Schaff v. Kennelly*, 61 N.W.2d 538, 546–57 (N.D.1953); *see also* Koford, Comment, *Rescission at Law and in Equity*, 36 Cal.L.Rev. 606 (1948).

**4.** Section 9–09–04, N.D.C.C., reads:
"*9–09–04. Rules governing rescission.* Rescission, when not effected by consent or pursuant to sections 9–08–08 and 9–08–09, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

1. He shall rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; and
2. He shall restore to the other party everything of value which he has received from him under the contract or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

while retaining its benefits, and thus affirming the contract, treat it as though it did not exist. 'He cannot treat it as good in part and void in part, but must affirm or avoid it as a whole.' "

168 N.W. at 658 (citation omitted). Also, "[a] party seeking rescission is not allowed to place conditions on his restoration or offer to make restoration ... except as permitted by Section 9–09–04, N.D.C.C." *Blair v. Boulger,* 358 N.W.2d at 523; *see also Alton's, Inc. v. Long,* 352 N.W.2d 198, 200 (N.D.1984). We have said that "compliance with these rules is a condition precedent to the maintenance of an action to rescind." *Blair v. Boulger,* 358 N.W.2d at 524.[5]

Section 32–04–21, N.D.C.C., sets forth the statutory basis for rescission of a written contract by adjudication.[6] *See Hovden v. Lind,* 301 N.W.2d 374, 377 (N.D.1981). "This court has often stated that rescission of a contract, whether the object of a suit in equity or an action at law, is governed by equitable principles." *Heinsohn v. William Clairmont, Inc.,* 364 N.W.2d 511, 513 (N.D.1985). Although section 9–09–04, N.D.C.C., does not expressly apply to adjudicated rescission (*see* section 32–04–21, N.D.C.C.), we have said it "must be complied with if such compliance is necessary to do equity." *Volk v. Volk,* 121 N.W.2d 701, 706 (N.D.1963). Also, we have said that compliance with these statutory rules is a condition precedent to the maintenance of an action to rescind in equity. *Id.* The Owans interpret this to mean that a person must restore, or offer to restore, prior to, or at the time of, commencing the action. In light of our resolution of this case, we need not decide whether or not an offer to restore must in all cases occur prior to the commencement of an action to rescind whether it be based in law or in equity.[7]

---

5. In *Schaff v. Kennelly,* this Court said:

"A party who elects to rescind a contract ... has a further choice of procedures. He may bring an action in equity setting forth his election to rescind and ask the court to declare a termination of the contract; or he may bring an action at law based upon his election to rescind and his restoration, or offer to restore, as required by Section 9–0904 NDRC 1943. In this case the vendee has chosen to take the latter course. He undertook to rescind without resorting to a court of equity and brings this action on the theory that rescission has been accomplished. A discussion of the distinction between an action at law to recover money on a contract that has been rescinded and an action in equity to obtain a rescission of the contract is found in *Philpott v. Superior Court,* 1 Cal.2d 512, 36 P.2d 635, 95 A.L.R. 990 [ (1934) ], and an annotation following that case, 95 A.L.R. 1000."

61 N.W.2d 538, 546 (N.D.1953). Although courts of equity and law are merged in North Dakota, the above demonstrates the distinction that has been made between actions at law and actions in equity to accomplish a rescission and accompanying benefits. *See also* 95 A.L.R. 1000.

6. Section 32–04–21, N.D.C.C., reads:

"*32–04–21. When rescission of contract adjudged.*—The rescission of a written contract may be adjudged on the application of the party aggrieved:

1. In any of the cases mentioned in section 9–09–02;

2. When the contract is unlawful for causes not apparent upon its face and when the parties were not equally in fault; or

3. When the public interest will be prejudiced by permitting it to stand."

7. The defendants cite *Alton's, Inc. v. Long,* 352 N.W.2d 198 (N.D.1984), and *Volk v. Volk,* 121 N.W.2d 701 (N.D.1963), in support of their assertion that an offer to restore must occur prior to, or at the time of, commencing an action to rescind. In *Alton's, Inc. v. Long,* although we noted that an offer had not been made prior to the action, we concluded that the offer to restore was defective in that it failed to offer to restore *everything* of value received under the contract, and that it was conditioned upon being paid damages. In other words, the plaintiff seeking the aid of equity was not willing to do equity. Likewise, in *Volk v. Volk,* we concluded that "the contract sought to be rescinded [was] not one [which required] restoration in order to do equity." *Id.* at 706. In neither of the cases were we faced with determining whether or not an actual restoration or offer to restore must occur prior to *commencement* of the suit.

Thus, although this Court adopted the language from old California cases, that restoration or an offer to restore was a condition precedent to the maintenance of an action in equity, the defendants have not referred us to any North Dakota cases which hold that failure to restore or offer to restore prior to *commencing an action* in equity, bars such a suit.

With the foregoing in mind, we quote in part from Restatement (Second) of Contracts § 384 comment b (1979):

"*b. Necessity of offer to return.* If a party seeking restitution offers to return what he has received, he may make his offer condi-

Additionally, we note that many exceptions to the rule that one must restore or offer to restore before one can maintain an action at law have developed. *See* Restatement (First) of Contracts § 349 (1932); Restatement (Second) of Contracts § 384 (1979); 17A Am.Jur.2d *Contracts* § 593 et seq. (1991). Presumably, these exceptions would have even more significance in an action based in equity where the general rule was that no prior restoration or offer to restore was necessary. *See* 12A C.J.S. *Cancellation of Instruments* § 55 (1980) ("[a]s a general rule, a restoration of, or offer to restore, the consideration or benefits is not a condition precedent to the institution of a suit for rescission or cancellation of an instrument"). In the early case of *Swan v. Great Northern Ry. Co.*, this Court noted the following:

"Some courts, while recognizing the correctness of the general rule that, in order to effect rescission, the rescinding party must place the other party in status quo by returning or tendering a return of whatever consideration he has received under the agreement, and the applicability of this rule to compromises and releases, have also recognized certain exceptions to the rule.

"Thus, it has been held that the consideration need not be returned in order to effect a rescission and entitle the defrauded party to maintain an action upon the original claim: (1) Where a tender would have been useless, or where the thing is utterly worthless; (2) where

there may be a severance of one part of the contract, in which event a partial rescission is sometimes allowed in the interests of justice; (3) where the plaintiff was entitled to receive the consideration irrespective of the assent got by its delivery to him."

168 N.W. at 660. Thus, even were we to accept the Owans' characterization of our stated rule that restoration or an offer to restore is a condition precedent to the maintenance of an action for rescission, we might conclude that the Borsheims' failure to have done so in this case may well be excused. However, we rest our decision upon other grounds.

In *Westgard v. Farstad Oil, Inc.* 437 N.W.2d 522 (N.D.1989), we reiterated the equitable rule that "where an instrument has been surrendered or discharged, or an incumbrance (sic) or charge has been satisfied through mistake, the party making the same is entitled to be replaced in his original position, provided only that other creditors have not been induced by the action of the plaintiff or petitioner to change their position and have not lost any substantial and material rights by such action." *Id.* at 524, quoting *Strehlow v. Fee*, 36 N.D. 59, 161 N.W. 719, 720 (1917). This equitable principle is especially favored where necessary to prevent unjust enrichment. We similarly conclude, in this case, that a party who releases a judgment through mistake, fraud, or upon failure of the consideration for the release,[8] is entitled to have the

tional on restitution being made to him. To this end, the law gives him a lien on what he has received. See § 380(3). In equity, his failure to make such an offer before commencing a suit for rescission did not preclude relief. The decree could be made conditional on an offer. At law, however, an offer was traditionally regarded as a condition of the right to commence an action based on rescission. The merger of law and equity and modern procedural reforms have made this distinction undesirable, and the rule stated in this Section reflects the increasing criticism of the rule at law. *If the court has the power to assure the required return in connection with the relief that it grants, it is not necessary that there have been a prior return or offer to return.* If all that is to be returned is money, a credit against a larger sum allowed in restitution will suffice. In other cases a condi-

al judgment will be proper. A court may, in awarding costs, take account of any failure by the party seeking restitution to afford the other party an adequate opportunity to make restitution without the commencement of legal process. This is particularly appropriate in cases, such as mutual mistake, impracticability of performance or frustration of purpose, in which the other party is in no way at fault. [Emphasis added.]"
*See also* 12A C.J.S. *Cancellation of Instruments* §§ 52 and 55 (1980) (general rule was that no prior notice or restoration or offer to restore was necessary to institute an action in equity).

8. In *Wolfe v. Wolfe*, 391 N.W.2d 617, 619 (N.D. 1986), we said that "a court's authority to make a just and equitable distribution of property under § 14–05–24, N.D.C.C., does not allow the court to rewrite a valid written separation

judgment reinstated if necessary to avoid unjust enrichment.[9] *See generally Ford Motor Credit Company v. Simmons,* 421 So.2d 698, 700 (Fla.App.1982) ("Every court of law possesses inherent equitable power sufficient to control its own judgments, and such includes power to set aside a satisfaction of one of its own judgments."); *Knecht, Inc. v. First Indemnity of America Insurance Company,* 583 A.2d 658, 659 (Del.Super.1990) (holding that court had "jurisdiction to set aside a satisfaction of judgment upon absence or failure of consideration"); *Romero v. DeConcini, McDonald & Brammer,* 26 Ariz.App. 235, 547 P.2d 506 (1976) (court may set aside a satisfaction of judgment made without consideration as to the balance); *W.F. Conelly Construction Co. v. L. Harvey Concrete, Inc.,* 162 Ariz. 574, 785 P.2d 94 (App.1989); 49 C.J.S. *Judgments* § 584 (1947) (court may order cancellation of the satisfaction of judgment and "direct[ ] execution to issue for so much of the judgment as remains unpaid"); *see also Business Service Collection Bureau v. Yegen,* 67 N.D. 51,

269 N.W. 46 (1936); *Huso v. Bismarck Public School Board,* 219 N.W.2d 100 (N.D.1974).

However, the Owans argue that, in the foreclosure action and the action seeking to enforce the personal guarantees, in any case, this action is barred because the judgments are res judicata. Res judicata is a term often used to describe such doctrines as merger, bar, and collateral estoppel, or the more modern terms of claim preclusion and issue preclusion. Res judicata means "that a judgment is conclusive not only as to all matters put in issue but also as to all claims which, under the rules, might have been put in issue in the prior trial." *Perdue v. Knudson,* 179 N.W.2d 416, 421 (N.D.1970). Generally, "[c]ourts will not permit a litigant to try a part of his case and then, if he is disappointed with the outcome of the action, to have another day in court simply by alleging new claims or making a new demand for relief, when he could have made such demand in the prior action." *Id.* "The purpose of the doctrine

agreement absent statutory grounds for rescission under Chapter 9–09, N.D.C.C." *See also* § 32–04–21, N.D.C.C., which incorporates § 9–09–02, N.D.C.C., by reference. We need not decide whether or not such a limitation on a court's equitable power exists with respect to agreements to release a valid judgment. In this case, a failure of consideration would meet one of the statutory requirements for unilateral rescission contained in § 9–09–02, N.D.C.C.

**9.** We note that there has been some discussion in other jurisdictions as to the applicability of rules similar to our Rule 60(b), N.D.R.Civ.P, in actions to set aside a satisfaction of a judgment. The Supreme Court of Montana concluded that a Rule 60(b) type motion was not the appropriate vehicle for obtaining relief, but, rather, that an independent action in equity was the proper vehicle for vacating a satisfaction of judgment. *McGee v. Burlington Northern, Inc.,* 179 Mont. 1, 585 P.2d 1296, 1297–98 (1978). Other courts have held that relief from a satisfaction of judgment may be had through a 60(b) type motion. *See Ford Motor Credit Company v. Simmons,* 421 So.2d 698, 700 (Fla.App.1982) (holding that court's inherent equitable powers could be invoked *either* by motion in the original action or by maintaining an independent action); *Knecht, Inc. v. First Indemnity of America Insurance Company,* 583 A.2d 658 (Del.Super.1990). The Arizona Court of Appeals, while noting that a Rule 60(b) type motion did not afford the procedural remedy for relief from a satisfaction of

judgment, concluded, however, that an independent action was not required. *W.F. Conelly Construction Co. v. L. Harvey Concrete, Inc.,* 162 Ariz. 574, 785 P.2d 94, 96–97 (App.1989). The Arizona court noted, "ordinarily the application to set aside is by motion *in the original action* for an order cancelling the entry or return of satisfaction and directing execution to issue for as much of the judgment as remains unpaid." *Id.* 785 P.2d at 97 (emphasis in original), quoting 49 C.J.S. *Judgments* § 584 at 1069.

Although some jurisdictions have held that vacating an entry of satisfaction of judgment can be made through a motion in the original action, we note the following discussion in 49 C.J.S. *Judgments* § 584(c)(3) (1947):

"A motion to vacate an entry of satisfaction may be heard and determined on affidavits or depositions, if the court in the exercise of its discretion chooses to do so. Where, however, the evidence is conflicting on the material questions of fact arising on the motion, the party seeking relief should be remitted to an action, or to a court of equity."

Thus, we need not decide whether or not a Rule 60(b) type motion may be used to vacate a satisfaction and reinstate a judgment. We conclude that, in any case, given the unique set of facts surrounding this action, an independent action in equity is appropriate. *See generally Hamilton v. Hamilton,* 410 N.W.2d 508 (N.D. 1987) (discussion on requirements for maintaining independent actions in equity).

is to require a definite termination of litigation and to prevent the multiplicity, waste, and harassment which would result if a party could compel an adversary to relitigate matters previously raised at issue and determined." *Oakes Municipal Airport Authority v. Wiese,* 265 N.W.2d 697, 700 (N.D.1978). Additionally, as is said in 46 Am.Jur.2d *Judgments* § 402 (1969), "[t]he doctrine of res judicata may be said to adhere in legal systems as a rule of justice ... [and] that the doctrine ... is to be applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice."

■ In *Wolf v. Anderson,* 422 N.W.2d 400 (N.D.1988), we concluded that judgment in a prior action seeking specific performance of a contract was res judicata as to a subsequent action seeking damages on the same contract. However, in *Wolf,* the asserted bases for both actions and forms of relief were present at the time of commencement of the first action. Thus, alternative claims even though inconsistent, could have been pleaded. In the case before us, the basis (i.e., the failure of consideration) for vacating the satisfaction and reinstating the judgment did not occur until this Court found the continuing guarantees unenforceable in *Borsheim v. Owan,* 467 N.W.2d 95 (N.D.1991). Thus, although the doctrine of res judicata may require a party to plead in the alternative with inconsistent claims to comply with the rule against splitting causes of action, it should not, if fairness and justice are not to be abandoned, require a party to anticipate a cause of action or claim which does not exist at the time of the commencement of the action or claim.[10]

Recognizing this distinction as existing in this case from *Anderson,* and in the interests of justice, we conclude that the prior judgments are not res judicata so as to foreclose the claim in this case seeking to vacate the satisfaction of the judgment dated August 10, 1987.

■ Lastly, although the Borsheims have stated a proper claim to have a satisfaction of judgment vacated which is not barred by res judicata, we must, notwithstanding, determine whether or not summary judgment was appropriate.

■ Under Rule 56, N.D.R.Civ.P., summary judgment is appropriate when, after viewing the evidence in a light most favorable to the opposing party, no genuine material issues of fact, or any conflicting inferences which can reasonably be drawn from the facts, remain. *Matter of Estate of Stanton,* 472 N.W.2d 741, 743 (N.D. 1991); *Miller Enterprises v. Dog N'Cat Pet Centers,* 447 N.W.2d 639 (N.D.1989). Furthermore, summary judgment is appropriate even when there are factual disputes if the resolution of such factual disputes will not change the outcome. *Stensrud v. Mayville State College,* 368 N.W.2d 519, 521 (N.D.1985). Although the burden is on the summary judgment movant to establish the absence of material issues of fact, an opposing party cannot rely on the allegations or denials of his or her pleadings, but, rather, must present competent admissible evidence demonstrating the existence of a genuine material issue of fact. *Binstock v. Tschider,* 374 N.W.2d 81, 83 (N.D.1985); *First National Bank of Hettinger v. Clark,* 332 N.W.2d 264, 267 (N.D.1983).

In *Biby v. Union National Bank of Minot,* 162 N.W.2d 370 (N.D.1968), we said:

"The mere fact that both parties have moved for summary judgment does not establish that there is no material issue of fact to be determined. A party may concede that there is no genuine issue of fact, if the court should adopt his theory of the law, but at the same time maintain that there is an issue of fact to be determined if the court should adopt the legal theories of his opponent."

---

10. We caution, however, that this does not mean that every time this Court announces a new rule of law, that a prior adjudicated action which may have a different outcome under the newly announced principle is not final and res judicata to subsequent actions. *See generally Slater v. Blackwood,* 15 Cal.3d 791, 126 Cal.Rptr. 225, 543 P.2d 593 (1975); *Small v. Burleigh County,* 239 N.W.2d 823 (N.D.1976).

162 N.W.2d at 373 (citations omitted). Based upon the above rule, the defendants argue that whatever the resolution of the legal issues, material issues of fact remain.

Initially, we note that not every mistake, breach, or failure of consideration can warrant the type of relief sought in this case. Only those things which are material to the transaction warrant such relief. Additionally, we note that the personal guarantees in this case were but a part of a larger arrangement. Thus, the issue more properly framed is whether or not the consideration for the release of the judgment had failed in any material part and whether or not reinstatement of the judgment accomplishes equity. The trial court's decision certainly reflects a conclusion that the Borsheims did not receive what they bargained for, and that equity was accomplished by reinstating the judgment.

In his affidavit, Vernon Owan disagreed with the assertion in George Borsheim's affidavit that the continuing guaranty was a material part of the master agreement and the main document relied upon by the parties. Rather, Vernon Owan contends that the parties relied upon and gave equal weight to all the settlement documents. Additionally, Vernon Owan disagreed with the assertion in George Borsheim's affidavit that the mortgaged property had not been sold pending the outcome of this case, as Owan said, "because he knows of no reason from and after entry of the judgment of foreclosure preventing the sale of the mortgaged property."

We conclude that the assertions in Vernon Owan's affidavit are insufficient to raise a genuine issue of material fact as to whether or not the personal guarantees to pay $65,952.88, with interest at 10 percent per annum, apparently payable in six annual installments, were a material inducement to Borshiems to release the original December 12, 1986, judgment of $73,734.38. Obviously, the personal guarantees were crucial from a consideration standpoint. We thus hold that summary judgment was proper and affirm the judgment as a lien against any and all property owned by the Owans as of December 12, 1986, except

that as it may affect innocent third party purchasers for value.

For the reasons stated in this opinion, the judgment of the district court is affirmed in part, modified in part, and remanded.

MESCHKE, J., and ALLAN SCHMALENBERGER, District Judge, concur.

VANDE WALLE, J., concurs in the result.

ALLAN SCHMALENBERGER, District Judge, sitting with the Court due to the resignation of the Honorable H.F. GIERKE III, as of November 20, 1991.

LEVINE, Justice, dissenting.

I really do long for the result achieved by the majority but not the damage it does to established legal principles. I therefore respectfully dissent.

The Borsheims first sought to enforce the guarantees given by the defendants. When they failed in that effort, they appealed from the decision denying the validity of the defendants' waiver of the protection of the anti-deficiency judgment statutes. We affirmed. Then, having at first not succeeded, they tried again. This time, the Borsheims sought rescission of their agreement and reinstatement of the judgment which they had released. Success was theirs! The district court granted summary judgment and rescission of the agreement and reinstated the prior judgment. The majority avoids the conclusion that the district court erred in granting rescission and decides this matter on what it says are different grounds. But the inevitable conclusion is that the summary judgment is sustainable under no ground whatsoever.

Lawyers operate in a milieu filled with contingencies and uncertainties. Because of that occupational hazard, it is ordinary practice to seek alternate and often inconsistent remedies in litigation in order to cover all bases and achieve the best possible result for clients. It is prudent and primary that lawyers take little for granted. While I agree that it may be unreason-

able for the law to expect or require a lawyer to guard against the reversal of established precedent, the same is not true with respect to an open question. The validity of a waiver of the anti-deficiency judgment statute's protection may have been undecided, as are many issues lawyers deal with, but the liveliness of the question could not have been ignored or underestimated nor the prospect of an answer unfavorable to the Borsheims unanticipated or unguarded against. *See First State Bank v. Anderson*, 452 N.W.2d 90 (N.D.1990) [deficiency judgments are one of the least favored creatures of law and there is public policy against them]; *accord Gust v. Peoples & Enderlin State Bank*, 447 N.W.2d 914 (N.D.1989); *Dakota Bank & Trust Co. of Fargo v. Funfar*, 443 N.W.2d 289 (N.D.1989).

It seems clear to me that the Borsheims should have requested not only that the trial court enforce the guarantees but also that, if not, it permit rescission for failure of consideration, or, as the majority now holds, to prevent unjust enrichment, assuming that the Borsheims had complied with all of the requirements of rescission, including the offer to restore consideration received. *E.g., Alton's, Inc. v. Long*, 352 N.W.2d 198 (N.D.1984); *Blair v. Boulger*, 358 N.W.2d 522 (N.D.1984). That simple and elementary measure of seeking alternate remedies would have avoided the ensuing morass of splitting claims for relief, creating multiplicity of trial court actions and appeals and perpetuating the agony of endless litigation. *See Wolf v. Anderson*, 422 N.W.2d 400 (N.D.1988). It also would have obviated the rationalization of the majority to achieve a result that does not easily flow from the application of recognized legal principles.

I would reverse. I, therefore, dissent.