S. A. REKO, as Guardian of the Person and Estate of John H. Williams, Incompetent, Respondent, v. CHARLES A. MOORE and Elza J. Moore, Appellants.

(176 N. W. 115.)

**Judgment — judgment is final as to parties and their privies as to all matters implied or determined in reaching final judgment.**

1. A judgment in a prior suit is deemed final and conclusive in subsequent litigation between the parties, or their privies, as to those matters necessarily determined or implied in reaching the final judgment, although no specific finding may have been made with reference thereto.

**Judgment — effect of conclusiveness of judgment cannot be avoided by withholding proof of amount.**

2. Where, in an action to set aside transfers on the ground of incompetency of the original grantor, an accounting is ordered and had to determine the value of the use and occupation of the premises, and the amount, if any, of payments made by the transferees for taxes and encumbrances upon the premises, a transferee cannot avoid the conclusive effect of the judgment merely by withholding proof of the amount of payments made by him.

Opinion filed January 17, 1920.

From a judgment of the District Court of Sargent County, *Allen,* J., defendants appeal.

Affirmed.

*Kvello & Adams,* for appellants.

"A judgment in a former action between the same parties is not conclusive evidence in a subsequent action between them on a different cause of action, unless it is made to appear that the particular controversy sought to be concluded was necessarily tried and determined." Herman, Estoppel, § 275; Carter v. Carter, 14 N. D. 66, 103 N. W. 425; Coyle v. Due, 28 N. D. 400, 149 N. W. 122; Selbie v. Graham, 100 N. W. 755.

"A demand or claim is not *res judicata* though it was interposed in a prior suit along with other claims, and leave to withdraw it was denied by the court, if the final judgment of the court appeared to be upon other claims and there is no evidence that the claim, the right to withdraw which was refused, was in fact considered or determined by the court." Nashau & L. R. Corp. v. Boston & L. R. Corp. 164 Mass. 222, 49 Am. St. Rep. 424; Zook v. Thompson (Iowa) 82 N. W. 930.

"The parties to the suit are conclusively bound by only what was in fact, litigated and decided." Citing: Cromwell v. Sac County, 94 U. S. 351, 24 L. ed. 195; Rossman v. Tillney (Minn.) 83 N. W. 42; State ex rel. etc. v. Cooley (Minn.) 69 N. W. 338; Fave v. Patch, 132 Mass. 105; Montpelier Sav. Bank & T. Co. v. School Dist. No. 5 (Wis.) 92 N. W. 439; Pitts v. Oliver (S. D.) 83 N. W. 591; Wentworth v. Racine County (Wis.) 74 N. W. 551; Chicago, R. I. & P. R. Co. v. St. Joseph Union Depot Co. 92 Fed. 22; Lawrence v. Stearns, 79 Fed. 878; 2 Black, Judgm. 2d ed. art. 506; Re Freud (Cal.) 66 Pac. 476; Stroup v. Pepper (Kan.) 76 Pac. 825.

*Wolfe & Schneller* and *J. A. McKee,* for respondents.

"Courts do not speak through their opinions, but through their judgments and decrees; therefore the announcement of the learned trial judge at the conclusion of the testimony, may be disregarded." Heck v. Bailey (Mich.) 169 N. W. 940.

"At the outset of the consideration of the doctrine of *res judicata,* it must be noted that there is a wide difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action." 15 R. C. L. p. 951; Luckman v. Union R. Co. (Or.) 69 L.R.A. 480; Selbie v. Graham, 18 S. D. 365.

"A former adjudication is conclusive on all facts adjudicated or necessarily involved in the former action, with their necessary legal effects." Howden v. McNamara, 20 N. D. 225; Patterson v. Wold, 33 Fed. 791; United States v. California & O. Land Co. 192 U. S. 355.

CHRISTIANSON, Ch. J. The plaintiff is an incompetent person, having been adjudged insane by the county court of Iowa county, Wisconsin, on January 23, 1907. Subsequently he was paroled or escaped from custody, and took up his residence in Sargent county in this state. The order declaring him to be insane has never been vacated or set aside, While residing in Sargent county he became the owner of the quarter section of land involved in this controversy. In November, 1910, the plaintiff bought from the Daniels-Jones Company a half section of land in Kidder county, in this state, paying down $1,900 in cash, and assuming certain mortgages against that land. In January, 1911, the Daniels-Jones Company sold and assigned to the plaintiff a contract of purchase covering a certain quarter section of "school" land in Clay county, Minnesota. As consideration for the assignment of such school land purchase contract, the plaintiff conveyed to the Daniels-Jones Company by deed the quarter section of land in Sargent county, and the half section in Kidder county. The quarter section in Sargent county alone is involved in this suit. It appears that the Daniels-Jones Company transferred that land to one A. P. Guy, and that he thereafter sold it to the defendants Moore, who went into possession thereof in the fall of 1911, and remained in possession until ousted by the judgment rendered in this action on April 14, 1919.

In 1912 a guardian was appointed for the plaintiff, Williams, on the ground of his incompetency, and a suit was brought by such guardian to set aside the conveyances of the Sargent county land. The defendants in the present action were named as defendants in that action, as were also the Daniels-Jones Investment Company, A. P. Guy, Harvey T. Daniels, and the Harvey T. Daniels Investment Company. That action came on for trial on May 29, 1913. Apparently the trial court announced its determination that the conveyances must be set aside, and the plaintiff, Williams, adjudged to be the owner of the Sargent county land. Thereupon application was made by his attorneys for an accounting in that action, and on August 20, 1915, the trial court made an order "that an accounting be had between the respective parties as to all matters involved in said action relating to the specific lands . . . involved in this action, especially as to the rental values of said lands and the use and profits of the same, and for taxes paid

thereon or for interest paid upon the encumbrances thereon, and upon any of the matters of detail involved in an accounting between the respective parties to said action, as relates to the lands involved herein." Thereafter testimony was taken before a referee at times and places stipulated by the attorneys for the respective parties. On January 24, 1917, the trial court made its findings of fact and conclusions of law, wherein it found that the plaintiff, Williams, was incompetent and ordered judgment to be entered vacating and setting aside the various conveyances to the land in controversy. In its findings the court found: "To adjust the equities between the several parties to this action, it is necessary to state an account of the rents, profits, and payments of taxes and on encumbrances by the several parties hereto involving the lands in controversy and to find the balance thereof, and the apportionment thereof." The court further found: "That the use plaintiff, John H. Williams, is not entitled to recover of any of the defendants any sum or sums whatsoever, for the use of said lands during the years 1911, 1912, 1913, 1914, and 1915, save and excepting the net sums actually received by such defendants for the use of said lands during said years, and that none of said defendants received anything whatever for the use of said lands during any of said years, excepting that the Harvey T. Daniels Investment Company for the use of the Kidder county land, received in 1913 the sum of $26.50, and in 1915 the sum of $47, total: $73.50." The court also found that the Harvey T. Daniels Investment Company had "paid on account of encumbrances, taxes, and interest on said lands in Kidder county" sums aggregating $1,346.54; and adjudged that the said company have and recover from the said Williams the sum of $1,273.04" (the excess of payments over rents and profits received), which sum was decreed to be a valid lien upon the Kidder county land. The court also found that the "Daniels-Jones Company had paid on account of encumbrances and taxes on said Kidder county lands the sum of $3,100;" that the plaintiff, Williams, had paid interest and taxes on the Clay county, Minnesota, land aggregating $110.39; and judgment was awarded the said Daniels-Jones Company in the sum of $2,989.61 (the excess of payments made by it on the Kidder county lands over the taxes and interest paid by

Williams on the Clay county lands), which sum was adjudged to be a valid lien upon the Kidder county land.

Judgment was entered April 9, 1917. The correctness thereof has never been questioned either by motion in the trial court or on appeal. The defendants Moore did not, however, see fit to surrender the land to the plaintiff, Williams. On the contrary, they retained possession thereof and farmed it during the seasons of 1917 and 1918. The plaintiff thereupon instituted this action to eject them, and to recover the value of the use and occupation. The defendants by way of counterclaim averred that they had paid certain taxes, and interest and principal of mortgages, against the land. The plaintiff interposed a reply to the counterclaim wherein he asserted that the matters set out in said counterclaim had been fully and finally settled and adjudicated by the judgment entered in the former action. The case was tried upon the issues thus formulated. The trial court allowed plaintiff to recover the value of the use and occupation of the premises during the time subsequent to the rendition of the judgment in the former action. It also permitted defendants to recover for tax payments made subsequent to the rendition of such judgment, but disallowed all payments made prior to that time on the ground that the right to recover such payments was involved in the former action, and that the judgment therein was conclusive upon that question.

The only question presented on this appeal is whether the trial court ruled correctly in holding that the judgment in the former action precludes a recovery upon the counterclaim. No question is raised as to the amount allowed for the use and occupation of the premises during the farming seasons of 1917 and 1918. Nor is any question raised as to the correctness of the judgment in so far as it awards plaintiff the possession of the premises.

The defendants contend that the former judgment is not a bar. They contend that the claims which constitute the basis of their counterclaim were not passed upon in that case. In support of that contention they call attention to the letter of the trial judge written January 24, 1917, to one of the attorneys for the defendants in the former action, wherein the trial judge said: "You will observe that I have said nothing with regard to the rights of E. J. Moore and C. A. Moore,

inasmuch as no evidence was offered as to whether they had ever paid any encumbrances or taxes upon any of the said lands. If, however, they have paid anything and counsel for the parties desire that some finding be made with reference to reimbursement, I am willing to make such a finding upon the stipulation of the parties as to what is due them." The findings were dated on that day, but were not filed until April 6, 1917.

We are of the opinion that the trial court was correct in holding that the payments made by the defendants for taxes and encumbrances against the land in controversy, which payments might have been proved and recovered in the former suit, cannot be made the basis of a counterclaim in this case.

We do not have before us the pleadings in the former action, but we do have the findings of fact and conclusions of law and the judgment therein. We also have the order providing for an accounting. It must be assumed that the pleadings presented the issues covered by the findings and the judgment. From the findings and judgment it is apparent that the purpose of the action was to obtain a full and final determination of all rights and interests of the several parties in and to the lands in controversy. The obvious and avowed purpose of the accounting was to obtain an adjustment in that action of all claims then existing growing out of the transactions in controversy, and thus obviate all necessity of any further litigation.

Nor do we see wherein the letter of the trial judge supports the contentions of the defendants—leaving the question of admissibility thereof wholly on one side. The letter clearly shows that the trial judge was of the opinion that the claims which the defendants attempt to assert as a counterclaim in this suit were properly involved and determinable in that action. The trial judge, of course, did not know whether such claims existed, and could make no finding with respect thereto in absence of evidence. He specifically called attention to the fact that no evidence had been adduced tending to establish such claims, and that for that reason he had made no finding with respect thereto. Similar claims existing in favor of the Daniels-Jones Company and the Harvey T. Daniels Investment Company were covered by the find-

ings and judgment in the case. Upon the record presented we are of the opinion that the claims which the defendants seek to assert by way of counterclaim in this case were properly provable, and are concluded by the judgment in the former action. 15 R. C. L. pp. 976, 977. The defendants could not avoid the effect of the judgment rendered in that case merely by withholding proof of such claims. Marshall v. Bryant Electric Co. 107 C. C. A. 599, 185 Fed. 499; Smith v. Cretors, 181 Iowa, 189, 164 N. W. 338; 23 Cyc. 1312, 1313. Nor does it appear (except from the trial judge's letter) that no proof was adduced. The findings purport to pass upon the entire controversy. There is no intimation that any claims were withdrawn, or that any right was left undetermined.

The judgment appealed from must be affirmed. It is so ordered.

BIRDZELL, ROBINSON, and BRONSON, JJ., concur.

GRACE, J., concurs in the result.