**RED LAKE BAND et al.**

v.

**The UNITED STATES.**

No. 189C (Exception No. 8).

United States Court of Claims.

Oct. 17, 1979.

As Amended on Denial of Rehearing Dec. 7, 1979.

Rodney J. Edwards, Duluth, Minn., for plaintiffs. Edwards, Edwards & Bodin, Duluth, Minn., Marvin J. Sonosky, and Sonosky, Chambers & Sachse, Washington, D. C., of counsel.

Robert E. Fraley, Washington, D. C., with whom was Asst. Atty. Gen. James W. Moorman, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and BENNETT and SMITH, Judges.

## OPINION

FRIEDMAN, Chief Judge.

### I.

This case, which the Indian Claims Commission transferred to this court pursuant to 90 Stat. 1990, 25 U.S.C. § 70v, is now before the court on review of a decision of the Commission dismissing a claim on the ground of collateral estoppel. In the dismissed claim, which seeks just compensation for an alleged fifth amendment taking of plaintiff's land, the plaintiff challenged a finding in an accounting report that $1,268,-156.84, the amount the government obtained at auction and credited to the plaintiff for 256,152 acres of land sold pursuant to the Act of February 20, 1904, ch. 161, 33 Stat. 46, was the reasonable and actual value of the land. The Commission, on the government's motion for summary judgment, ruled that a finding of fact in an earlier decision of this court, *Chippewa Indians v. United States*, 80 Ct.Cl. 410 (1935), aff'd, 301 U.S. 358, 57 S.Ct. 826, 81 L.Ed. 1156 (1937), collaterally estopped the plaintiff from challenging the finding. The finding states in part:

XXXI. The net proceeds of the sale of that part of the said reservation embracing 256,152 acres . . . amounted to $1,268,156.84, which amount was the reasonable and actual value of said lands on

the effective date of said act of February 20, 1904. 80 Ct.Cl. at 454.

The finding was based upon a stipulation signed by all the parties.

The Commission dismissed the claim, 29 Ind.Cl.Comm. 211, 235 (1972), and denied the plaintiff's motion for leave to amend the complaint to reassert the claim. 35 Ind.Cl.Comm. 98, 112 (1974).

Following transfer of the case to this court, the plaintiff moved the trial judge to reconsider the Commission's ruling and to hold that the dismissed claim was not barred by collateral estoppel. The trial judge denied reconsideration of the Commission's decision, and certified his decision to the court.

■ On May 11, 1979, the court affirmed the trial judge's denial of reconsideration as a valid exercise of discretion in the absence of an express referral from this court. We concluded, however, that, in the interest of judicial economy, review of the dismissal on the merits would be proper at this time. *Red Lake Band v. United States*, No. 189–C (order entered May 11, 1979). Pursuant to our order of May 11, the parties filed supplemental briefs on the merits of the Commission's decision. Upon consideration of the arguments contained therein and the circumstances surrounding the prior litigation upon which the Commission relied, but without oral argument, we conclude that the Commission's application of the doctrine of collateral estoppel was erroneous.

## II.

The plaintiffs in the prior litigation, 80 Ct.Cl. 410, *supra*, were Chippewa Indians who were not members of the Red Lake Band of Chippewas. The petition, brought under a special jurisdictional statute, alleged that the United States unlawfully took part of the lands originally held by the government in trust for the entire Chippewa tribe, and placed those lands, totaling 666,434.64 acres, in a new trust for the exclusive benefit of the Red Lake Band (referred to herein as the Red Lake Reservation). *Id.* at 460. The government previously had sold a portion of the land in dispute, the 256,152 acres now at issue, for $1,268,156.84, and credited the proceeds to the Red Lake Band for their exclusive benefit. The Chippewa plaintiffs sought judgment for the value of the entire 666,434.64 acres, including the land previously sold. *Id.* at 460–61. Thus, the petition raised two basic questions: (1) whether the plaintiffs were entitled to share in the benefits of the land which the government had set aside for the Red Lake Band, and (2) if so, the value of the land, including the 256,152 acres previously sold. Resolution of the latter issue would be necessary to determine the amount of recovery.

In response to the petition in the *Chippewa* case, the government notified the Red Lake Band, which initially was not a party to the suit, that the government would require the Band to reimburse it to the extent of any judgment rendered for the plaintiffs. Congress in 1928 amended the jurisdictional statute upon which the action was based to authorize the Band to appear "and defend their rights in the matter." Act of May 18, 1928, ch. 623, 45 Stat. 601. The amendment further directed this court to determine whether, if judgment were rendered against the United States, the government should pay part or all of it from funds held in trust for the Band. The statute specifically provided that even if such funds could be used, the United States could not use the remaining Red Lake Reservation land to satisfy any part of the judgment, and, if Red Lake funds were available but inadequate, the government would be liable for any deficiency. *Id.*

Pursuant to the Act of May 18, the Band intervened to defend its rights to the Red Lake Reservation. The Band voluntarily joined the other parties in signing the stipulation. The parties to the present action concede that, if the court had found for the plaintiffs on the issue of entitlement, the stipulation would have bound all the parties in that case. The Band contends, however, that, since the government threatened to charge the Band with any award, it was in the Band's interest to agree upon the lowest possible valuation, and therefore its joining

in the stipulation should carry no weight here.

The record in the *Chippewa* case suggests that the Band in fact had no perceived interest in the valuation of the 256,152 acres. The Act of May 18, 1928, *supra,* expressly limited the Band's liability to "funds held by the United States in trust for the Red Lake Band," and prohibited the use of Red Lake land to satisfy any judgment. Moreover, even though the government claimed the right to be reimbursed for any award, the government apparently assumed that the sale proceeds for the land limited any potential liability for that part of the Reservation.[1]

The willingness of the Band and of the Chippewa plaintiffs to stipulate, without a detailed inquiry, the value of that tract of land, suggests that they shared the government's view that any award for the 256,152 acres would be limited to the amount of the sale proceeds. The attorney for the Band stated that he was willing to stipulate value in order to "save a vast amount of time and money" in litigation. Hearing Before Assistant Commissioner of Indian Affairs, Oct. 26, 1928. Counsel for the Band did not express any awareness or concern during the hearing that the stipulation might affect substantive rights of the Band. Similarly, the attorney for the Chippewa plaintiffs stated, "I think the 256,000 acres should be stipulated separately . . . It seems to me there will be very little trouble in arriving at a fair valuation." *Id.*

A government memorandum summarizing the factual bases for stipulating the value of the entire Red Lake Reservation at the time of the alleged taking reveals an extensive inquiry by the parties into the value of the unsold portion of the Red Lake Reservation, including an examination of detailed records of timber sales to determine the exact footage at the time of the alleged taking, and a "comprehensive survey of the character of the land" to determine its value. In contrast, regarding the value of the 256,152 acres, the memorandum simply stated that (1) the government was "prepared to agree" on the actual sales figure as the value of the land, and (2) the stipulation was "satisfactory to the counsel for the Indians." Thus, the record, although incomplete, suggests that the parties assumed that any recovery by the plaintiffs for the 256,152 acres would be limited to the actual sale price, and therefore stipulated the value of that land without an independent factual inquiry.

Under the apparent assumption of the parties, the Band had no interest in the value of the 256,152 acres. If the plaintiffs prevailed on the issue of entitlement to that land and if the court were to determine that the government could satisfy the judgment from funds held in trust for the Band, the Band would be required to return an amount equal to the sale proceeds. If the government and the Band prevailed on the issue of entitlement, the government would simply retain the sale proceeds held in trust for the Band. Thus, the Band's interest, if any, in the value of the 256,152 acres would have been to preserve a possible claim based upon the sale of that land for some future litigation.

In the statute authorizing the Secretary of the Interior to sell the 256,152 acres and credit the proceeds to the Red Lake Band, Congress purported to be acting as trustee for the Indians, and to be merely changing the form of tribal property, not appropriating it. Act of February 20, 1904, 33 Stat. 48, 49. At the time of the *Chippewa* case, the standard for judicial review of such congressional action rendered it unlikely that the adequacy of compensation paid to the Band could be successfully challenged. *See Lone Wolf v. Hitchcock,* 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903). Moreover, at the time counsel for the Band signed the

---

1. Assistant Attorney General Galloway, in a letter to the First Assistant Secretary of the Interior dated August 11, 1928, stated that "the Government's liability if any, would be measured by the amount [upon sale]. Consequently, I can see no necessity for evaluating the lands [sold]."

stipulation, there was no reason to believe that Congress would consent to suit for "moral claims" against the government. It appears likely, therefore, that when the stipulation was signed, the parties did not anticipate that the stipulation would affect any significant substantive rights or interests of the Band.

### III.

The preceding analysis leads us to conclude that the plaintiffs should not be estopped from litigating the issue of value in this case.

The essential requirements for the application of collateral estoppel are summarized in Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, 1977):

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*See also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 649 n.5, 58 L.Ed.2d 552 (1979); *Commissioner v. Sunnen*, 333 U.S. 591, 597–98, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Creek Nation v. United States*, 168 Ct.Cl. 483 (1964); 1B Moore's Federal Practice ¶ 0.443, at 3901–29, ¶ 0.444(4), at 4025–29. The parties agree that the pleadings in the *Chippewa* case adequately raised the issue of value. They differ, however, on the effect of the stipulation.

■ The government maintains that, since the parties did not expressly limit the stipulation to the *Chippewa* litigation, the stipulation should bind the Band, a party to that stipulation, in all future litigation. As a general rule, however, an issue is not "actually litigated" for purposes of collateral estoppel unless the parties to the stipulation manifest an intent to be bound in a subsequent action. Restatement (Second) of Judgments § 68, Comment e (Tent. Draft No. 4, 1977). Moreover, an intention to be so bound should not be readily inferred. *See, e. g., Hentschel v. Smith*, 278 Minn. 86, 153 N.W.2d 199 (1967). The circumstances of the prior litigation, and the prevailing law at the time, discussed *supra*, suggest strongly that the parties did not consider the possibility of subsequent action by the Band challenging the adequacy of compensation paid for the land sold. Based upon the available evidence, therefore, there is no indication that the Band intended to be bound by the stipulation of value in a subsequent action.

Even if the issue of value had been "actually litigated" in the prior action, that determination was not essential to the judgment in the case. Since the court in the *Chippewa* case determined that the plaintiffs had no right to the 256,152 acres, it never reached the question of the value of the land. Thus, the determination in finding XXXI of the value of part of the land in dispute was not necessary to, and in fact was irrelevant to determination of the only issue the court decided, the plaintiff's right to compensation. The government apparently concedes this point. Defendant's Supplemental Brief of July 16, 1979. The applicable rule therefore is that stated in *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists, Local 1304*, 344 F.2d 300, 306 (9th Cir. 1965) (quoting Restatement of Judgments § 68, Comment *o*):

> Where the jury or the court makes finding of fact but the judgment is not dependent upon these findings, they are not conclusive between the parties in a subsequent action based upon a different cause of action.

We conclude, therefore, that the Band is not barred from litigating the issue of value on the ground of collateral estoppel.

■ Equitable considerations also indicate that the Band should have an opportunity to establish the value of the land in question. As already noted, under the substantive law applicable at the time the stipulation was signed, the possibility of subsequent litigation that would raise the issue of the value of the 256,152 acres was sufficiently remote that the parties, and in particular the Band, may have lacked an adequate incentive to litigate the issue. Under the circumstances, therefore, even if the

general rules of collateral estoppel were otherwise applicable, an exception would be warranted, especially since the stake of the Band in valuation of the land is considerably greater in the present suit. *See* 1B Moore's Federal Practice ¶ 0.442[2], at 3861; *Amsden v. United States*, 175 F.Supp. 147, 146 Ct.Cl. 809 (1959), *discussed in 1776 K Street Associates v. United States*, 602 F.2d 354 (Ct.Cl.1979).

We therefore conclude that the Band should have an opportunity to prove, if it can, that the net proceeds from the sale of the 256,152 acres did not equal the actual value of those lands. The issue of the value of the 256,152 acres is remanded to the Trial Division for further proceedings.

