Susan L. **HOFSOMMER,** Plaintiff and Appellee,

v.

**HOFSOMMER EXCAVATING, INC.,** Defendant and Appellant.

Civ. No. 910368.

Supreme Court of North Dakota.

June 25, 1992.

---

James R. Jungroth (argued), Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for plaintiff and appellee.

LaDonne R. Vik (argued), Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendant and appellant. Appearance by appellant Kent Hofsommer.

ERICKSTAD, Chief Justice.

Hofsommer Excavating, Inc. [HEI], appeals from a district court judgment awarding Susan L. Hofsommer $28,639.18 plus interest for back wages allegedly owed to her by HEI. We reverse.

Susan and Kent D. Hofsommer were married in 1970. On April 1, 1978, Susan and Kent incorporated HEI, an excavating business that had been started by Kent's father. Kent served as president and Susan served as secretary/treasurer of HEI. Kent was the sole shareholder. Susan worked as the office manager and bookkeeper for HEI in Oakes while Kent traveled around the country with HEI's work crews. A May 1, 1979 corporate resolution set Kent's salary at $24,000 per year and Susan's salary as $5,000 per year. During the ensuing years, neither Kent nor Susan was paid all of the wages authorized by the corporate resolution because HEI did not generate sufficient revenue. However, Kent and Susan withdrew money from the corporation to pay their living expenses.

On June 29, 1989, Kent and Susan were divorced. Susan was granted custody of the couple's two children and Kent was ordered to pay child support. Neither party was ordered to pay alimony.

Kent and Susan entered into a property settlement agreement and the terms of the parties' stipulation were incorporated in the divorce judgment. As part of Susan's share of the marital property, Kent was ordered to pay Susan $65,000 over a 10–year period with interest at 7.4 percent annually on the unpaid balance. The divorce judgment also provided:

"That [Susan] loaned the business of the parties certain sums and presently the business owes [Susan] $22,572.18. This shall be paid by [Kent] or the corporation owned by [Kent] to Susan ... over a period of 10 years with interest on the unpaid balance at 7.4% in quarterly installments. This money may be paid out of the business if [Kent] so chooses but Kent ... is hereby personally obligated to make said payment as part of the property settlement herein. The right of prepayment is hereby given."

Susan also received a one-half interest in the marital home while Kent received the other one-half interest. Both Kent and Susan received other property pursuant to the stipulation and judgment. Kent retained sole ownership of HEI.

The judgment further provided:

"That this agreement constitutes the entire agreement between the parties and that each discharges the other from any and all other payments for support or alimony or further property other than as set out herein and upon the Entry of Judgment each party shall be released from any and all further liability to the other than the payments set out herein."

After the divorce, Susan continued to work for HEI. She received from HEI wage payments of $2,574 in 1989 and $5,150 in 1990. Kent terminated Susan's

employment with HEI on September 19, 1990.

In November 1990, Susan brought this action against HEI seeking back wages she was not paid from 1980 through her termination in 1990. HEI answered and asserted that the wages allegedly owed to Susan "were resolved in the property settlement agreement in connection with" Kent and Susan's divorce; that Susan had written payroll checks payable to herself while she worked for HEI following the divorce and was estopped from seeking further compensation; and that the claim for some of the wages allegedly owed to Susan was barred by the statute of limitations. HEI also asserted that, while employed as its bookkeeper, Susan wrote unauthorized checks to herself.

Following a bench trial, the trial court determined that the May 9, 1979 corporate resolution setting Susan's salary at $5,000 per year was a "contract between the parties of indefinite duration." The court determined that Susan's claim for back wages "consists of an open account where the Statute of Limitations applies as each item is added," and that her claim for back wages prior to November 1984 was therefore barred by § 28–01–16(1), N.D.C.C.

The court also determined that Susan's wage payments of $7,724 during 1989 and 1990 could be applied to wages owed prior to November 1984 because HEI "did not limit the payment to recent debts owed" to Susan. The court reasoned that, based on a letter written by Kent on HEI stationery in January 1990, "[a] debt of unspecified nature and amount was acknowledged by [HEI] ..., but no instructions were made directing any payments which might be received by Susan to any particular debts owed Susan by the company." The court also found that Susan "properly recorded the checks which she wrote on the company account and did not misappropriate any corporate funds."

The court ruled that Kent and Susan's "divorce stipulation did not cover payment of back wages from [HEI] to Susan" and awarded her $28,639.18, along with interest, based on a salary of $5,000 per year

from November 30, 1984, through September 19, 1990. HEI has appealed from this judgment.

The dispositive issue in this case is whether or not Kent and Susan's property settlement agreement incorporated in their 1989 divorce judgment bars, under principles of res judicata and collateral estoppel, Susan's present claim against HEI for back wages. Under the circumstances, we conclude that Susan's claim is barred.

Res judicata "is a term often used to describe such doctrines as merger, bar, and collateral estoppel, or the more modern terms of claim preclusion and issue preclusion." *Borsheim v. O & J Properties*, 481 N.W.2d 590, 596 (N.D.1992). These doctrines promote efficiency for both the judiciary and litigants by requiring that disputes be finally resolved and ended. *Borsheim, supra.* But the doctrines are not "'to be applied so rigidly as to defeat the ends of justice....'" *Borsheim, supra,* [quoting 46 Am.Jur.2d *Judgments* § 402 (1969)]. The applicability of res judicata or collateral estoppel is a question of law. *Peacock v. Sundre Township*, 372 N.W.2d 877, 879 (N.D.1985).

Although collateral estoppel is a branch of the broader law of res judicata, the doctrines are not the same. Res judicata, or claim preclusion, is the more sweeping doctrine that prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which was resolved by final judgment in a court of competent jurisdiction. *E.g., Byron's Const. v. Department of Transportation*, 463 N.W.2d 660, 662–663 (N.D. 1990); *Wolf v. Anderson*, 422 N.W.2d 400, 401–402 (N.D.1988); *Peacock, supra*, 372 N.W.2d at 878; *Perdue v. Knudson*, 179 N.W.2d 416, 421–422 (N.D.1970). On the other hand, collateral estoppel, or issue preclusion, generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit. *E.g., First State Bank v. Anderson*, 452

N.W.2d 90, 93 (N.D.1990); *Vanover v. Kansas City Life Ins. Co.*, 438 N.W.2d 524, 526 (N.D.1989); *Schiele v. First Nat'l Bank of Linton*, 404 N.W.2d 479, 481 (N.D.1987); *Reko v. Moore*, 44 N.D. 644, 176 N.W. 115, 116–117 (1920); *Carter v. Carter*, 14 N.D. 66, 103 N.W. 425, 426 (1905).

■ Historically, collateral estoppel was limited by the principle of mutuality, which means that "a judgment can operate as collateral estoppel only where all the parties to the proceeding in which the judgment is relied upon were bound by the judgment." Annot., *Comment Note.–Mutuality of Estoppel as Prerequisite of Availability of Doctrine of Collateral Estoppel to a Stranger to the Judgment*, 31 A.L.R.3d 1044, 1048 (1970). Although the principle of mutuality has been abandoned in numerous jurisdictions [*e.g.*, *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) ], this court has applied the mutuality rule as a prerequisite to the application of collateral estoppel. *See Armstrong v. Miller*, 200 N.W.2d 282, 286–288 (N.D.1972). "For all practical purposes, the mutuality rule is coextensive with the requirement that the plea of res judicata is available only to a party to the judgment and his privies." *Armstrong, supra*, 200 N.W.2d at 287.

■ Four tests must be met before collateral estoppel will bar relitigation of a fact or issue involved in an earlier lawsuit: (1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?; (2) Was there a final judgment on the merits?; (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue? *Armstrong, supra.*

In this case, the result is the same whether we apply the test for res judicata or the test for collateral estoppel.

■ For purposes of both res judicata and collateral estoppel in this state, only parties or their privies may take advantage of or be bound by the former judgment. *See Flaherty v. Feldner*, 419 N.W.2d 908, 910 (N.D.1988); *Armstrong, supra; Stetson v. Investors Oil, Inc.*, 176 N.W.2d 643, 651 (N.D.1970); *see also* 1B Moore's Federal Practice ¶ 0.411[1], at p. 386 (2d ed. 1992) [a judgment can be "invoked as res judicata only by a party to the prior proceeding or his privy against another party to the proceeding or his privy."] Because HEI was not technically a party in the divorce action, we must determine whether privity exists between HEI and Kent.

■ In general, privity exists if a person is "so identified in interest with another that he represents the same legal right." 46 Am.Jur.2d *Judgments* § 532, at p. 683 (1969) [Footnote omitted.] In *Stetson, supra*, we said:

"The strict rule that a judgment is operative, under the doctrine of res judicata, only in regard to parties and privies, is sometimes expanded to include as parties, or privies, a person who is not technically a party to a judgment, or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised by prosecution of the action, employment of counsel, control of the defense, filing of an answer, payment of expenses or costs of the action, the taking of an appeal, or the doing of such other acts as are generally done by parties." [Quoting 46 Am.Jur. 2d, *supra*, § 535 at pp. 688–690.]

Fundamental fairness underlies any determination of privity. *Bismarck Public School District No. 1 v. Hirsch*, 136 N.W.2d 449, 453–454 (N.D.1965).

■ We have no difficulty in concluding that there was privity between HEI and Kent. Kent was at all pertinent times the sole shareholder of HEI. Courts have held that an individual who has full ownership of a close corporation and is in complete control of its affairs is presumed to have a sufficient common interest to be in privity with the corporation. *E.g., In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.1983);

*Sparks Nugget, Inc. v. C.I.R.*, 458 F.2d 631, 639 (9th Cir.1972), *cert. denied sub-nom., Graves v. C.I.R.*, 410 U.S. 928, 93 S.Ct. 1362, 35 L.Ed.2d 589 (1973); *Miller v. Northwestern Nat'l Ins. Co.*, 354 N.W.2d 58, 62 (Minn.Ct.App.1984); *Restatement (Second) of Judgments* § 59, Comment (e) (1982); 1B Moore's Federal Practice ¶ 0.422[3], at p. 704 (2d ed. 1992); 1 O'Neal & Thompson, O'Neal's Close Corporations § 1.10, at p. 43 (3rd ed.). We conclude that privity existed between HEI and Kent, and that HEI may therefore invoke both res judicata and collateral estoppel as a defense to Susan's action. *See, e.g., Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288–1289 (5th Cir.1989); *Grisanzio v. Bilka*, 158 Ill.App.3d 821, 110 Ill.Dec. 585, 589, 511 N.E.2d 762, 766 (1987).

◼◼◼◼ We believe that res judicata bars Susan's claim for back wages against HEI. In applying res judicata, no distinction is made between judgments entered after stipulation by the parties and judgments entered after trial. *Peacock, supra; Morris v. Richland County Board of Drain Commissioners*, 313 N.W.2d 763, 765–766 (N.D.1981). The divorce judgment, which incorporated Kent and Susan's property settlement agreement, became a final judgment by a court of competent jurisdiction, and "discharge[d]" Kent "from any and all other payments for ... property other than as set out herein...."

◼◼◼ A marital estate includes all of the real and personal property accumulated by the parties, regardless of its source. *Freed v. Freed*, 454 N.W.2d 516, 520 (N.D.1990). We reject Susan's argument that her claim for back wages against HEI was a speculative, unliquidated chose in action that could not be considered marital property. She relies on *Fries v. Fries*, 288 N.W.2d 77, 81 (N.D.1980), where we held that "a pending personal injury claim is far too speculative to include in a property division of a marital estate." *Fries* is distinguishable. Susan's claim is for accrued but unpaid wages of $5,000 per year. This claim is not speculative, but was readily ascertainable. If unpaid retirement benefits can be considered as marital property [*e.g., Zander v.*

*Zander*, 470 N.W.2d 603, 605 (N.D.1991) ], we see no reason why an ascertainable claim for back wages should be treated any differently.

◼◼◼ HEI, owned solely by Kent, was marital property subject to distribution. It is the net worth of a corporation that determines its value to a marital estate. *Heggen v. Heggen*, 452 N.W.2d 96, 100 (N.D. 1990). Susan, who served as bookkeeper for HEI, testified that she was aware of her claim for wages at the time of the divorce and that she did not list her accrued claim for wages as a liability or debt on the corporate books. Had it been listed as a debt, it would have reduced the value of HEI and, hence, the value of the property ultimately distributed by agreement to Kent. Viewed either as an asset of Susan's or a debt of HEI's, Susan's unasserted claim for back wages certainly affected the value of the marital estate. As such, Susan's claim for back wages arose out of the same facts and circumstances surrounding the parties' valuation of the marital estate and subsequent stipulated property distribution finalized in the divorce judgment.

Susan's wage claim was capable of being, and should have been, raised as part of the divorce proceeding. We conclude that res judicata bars Susan from raising the claim in this action. *See generally Estate of McNamara*, 402 N.W.2d 893 (N.D.1987); *Kenney v. Don–Ra, Inc.*, 178 Ga.App. 492, 343 S.E.2d 779 (1986); *Jones v. Jones*, 442 P.2d 319 (Okla.1968).

◼◼◼◼ Likewise, we believe that Susan is collaterally estopped from claiming back wages against HEI in this action.

As a general rule, when a particular fact is established not by judicial resolution but by stipulation of the parties, that fact has not been "actually litigated" for purposes of collateral estoppel unless the parties to the stipulation manifest an intent to be bound in a subsequent action. *E.g., Otherson v. Department of Justice, I.N.S.*, 711 F.2d 267, 274 n. 6 (D.C.Cir.1983); *Red Lake Band v. United States*, 607 F.2d 930, 934, 221 Ct.Cl. 325 (1979). Kent and Susan's

property settlement agreement stated that the agreement constituted the entire agreement between the parties regarding their rights to marital property and that, upon entry of judgment, "each party shall be released from any and all further liability to the other than the payments set out herein." In this case, Kent and Susan manifested an intent to be bound by their stipulated settlement.

Applying the test for collateral estoppel, we believe that Susan's claim for wages against HEI was, or by logical and necessary implication must have been, adjudicated in the divorce action. It is true that wages allegedly owed by HEI are not specifically mentioned in the stipulation and judgment. However, Susan testified that she was aware of her unpaid wages at the time of the divorce and that those wages were not listed as debts in the corporate books. The stipulation states that HEI "presently" owed Susan only $22,572.18. As we have noted, Susan's claim for wages against HEI would directly impact the value of the marital estate. The parties agreed that the stipulation discharged them from any further claims against their marital property. Therefore, by logical and necessary implication, the stipulation and judgment constituted an adjudication that Susan had no wage claim outstanding against HEI. This is the identical issue Susan sought to litigate in this action.

There is no dispute that a final judgment was entered on the merits in the divorce action. Furthermore, Susan, the party against whom the plea of collateral estoppel is asserted, was in fact a party to the prior divorce action. Susan was given a fair opportunity to be heard on the issue in the prior divorce proceeding. Susan was represented by counsel during the divorce proceedings leading up to the stipulated property settlement agreement. Kent was not represented by counsel. Susan was aware of her wage claim at the time of the divorce. Nothing in the record suggests that Susan did not have a fair opportunity to be heard on the wage issue during the divorce proceedings. We therefore conclude that collateral estoppel bars Susan from litigating that issue in this action.

*See generally, Dakota Services v. Wieman Land & Auction,* 429 N.W.2d 480, 481–482 (S.D.1988).

In view of our disposition of this case, it is unnecessary to address the other issues raised by the parties. Accordingly, the judgment is reversed.

JOHNSON, MESCHKE and VANDE WALLE, JJ., concur.

LEVINE, Justice, concurring.

I agree that there is privity between HEI and Kent and that res judicata bars Susan's claim for back wages against HEI. Because that holding is dispositive, I concur in the result and that portion of the opinion that analyzes res judicata.