**Christopher GERACI as natural and custodial guardian and next friend of S.G. and H.G., both minors, Plaintiff,**

v.

**WOMEN'S ALLIANCE, INC., d/b/a Domestic Violence and Rape Crisis Center, and Stark County, North Dakota, Defendant.**

Case No. 1:07–cv–012.

United States District Court, D. North Dakota, Southwestern Division.

April 24, 2008.

Janet Virginia Keymetian, Nodland Law Offices, Bismarck, ND, for Plaintiff.

James S. Hill, Zuger Kirmis & Smith, Michael C. Waller, Fleck, Mather & Strutz, Ltd., Bismarck, ND, for Defendant.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

DANIEL L. HOVLAND, Chief Judge.

Before the Court is a Motion for Summary Judgment filed on December 11, 2007, by defendant, Women's Alliance, Inc., and a Motion for Summary Judgment filed on January 3, 2008, by defendant Stark County, North Dakota. *See* Docket Nos. 16 and 24. On February 1, 2008, Christopher Geraci, as natural and custodial guardian and next friend of his minor daughters, S.G. and H.G., filed a response in opposition to the Defendants' motions. *See* Docket No. 32. Women's Alliance filed a reply on February 13, 2008, and Stark County filed a reply on February 14, 2008. *See* Docket Nos. 45 and 46. The Court grants the Defendants' motions for summary judgment for the reasons set forth below.

## I. BACKGROUND

The factual background of this dispute was originally set forth in *Geraci v. Women's Alliance, Inc. et al.*, 436 F.Supp.2d 1022 (D.N.D.2006) (*Geraci I*). Women's Alliance, in its "Statement of Material Facts," adopts and asserts the factual background as set forth in *Geraci I. See* Docket No. 18. The facts stated below are taken, in relevant part, from *Geraci I.* This action is based on the same set of facts on which *Geraci I* was based and decided.

Christopher Geraci and Heather Geraci were married in 1998. They lived in New York and had two daughters, S.G. and H.G. Christopher and Heather separated in April 2002. Heather was awarded physical custody of S.G. and H.G. and Christopher was granted supervised visitation. In August 2002, Christopher was granted unsupervised visitation. This change in visitation prompted Heather to leave New York with S.G. and H.G. without informing Christopher. On October 1, 2002, due in part to Heather's disappearance, Christopher was awarded custody of S.G. and H.G. Heather was unaware that a change in custody occurred.

In February 2003, Heather, using the name Marie Johnson, arrived at the Domestic Violence and Rape Crisis Center (Crisis Center) in Dickinson, Stark County, North Dakota. Heather told Crisis Center employees that she was trying to

keep herself and her children away from a "violent situation," but did not provide any further details.

On June 22, 2003, a social worker for Stark County Social Services learned of Heather's true identity and discovered that S.G. and H.G. had been reported missing. The social worker reported this information to the Dickinson Police Department. The Dickinson Police Department learned that the custody case was still open, that the children were believed to be with Heather, and that Christopher had been awarded custody of the children. On June 24, 2003, Dickinson police officers took custody of S.G. and H.G. The children were subsequently placed in foster care.

On June 25, 2003, the District Court of Stark County found that there was probable cause to believe that S.G. and H.G. were deprived and that there were reasonable grounds to believe that it was necessary to enter a temporary shelter care order for their protection. The state district court ordered that Stark County Social Services be granted custody of S.G. and H.G. for a period of sixty (60) days. If Stark County Social Services did not file a formal petition to retain custody within thirty (30) days, the children would be returned to Christopher's custody.

While S.G. and H.G. were in the custody of Stark County Social Services, visitation for Christopher took place at Family Connection, a facility that provides supervised visitation for families. Heather's visitation took place at the Crisis Center. The children's visits took place between the hours of 8:00 a.m. and 5:00 p.m. Overnight visits were not permitted. Extra staff members were always on site at the Crisis Center when S.G. and H.G. visited Heather.

Stark County Social Services decided not to pursue a formal petition to retain custody of S.G. and H.G. beyond the sixty (60) day time period established in the temporary shelter care order. Stark County Social Services arranged to transfer custody of S.G. and H.G. to Christopher on July 24, 2003, at 9:00 a.m. In light of the impending transfer, security was increased at the Crisis Center so that an employee would be with Heather at all times during the children's visits. Neither Christopher nor his lawyer at the time opposed such visitations.

On July 24, 2003, Heather coerced a fellow resident at the Crisis Center to divert the attention of the supervising employee. Heather then told the other Crisis Center employee that she was going outside to pick flowers, a common activity for her and the children. Instead, Heather and the children entered a waiting car and left the Crisis Center. Heather did not inform anyone of her plan to leave the Crisis Center with the children. In fact, Heather had told others that she intended to pursue legal action to regain custody of S.G. and H.G. Heather was not assisted in formulating or carrying out her plan by any employee of the Crisis Center or Stark County Social Services. Heather did not contact employees of the Crisis Center or Stark County Social Services after she left the Crisis Center.

On November 13, 2003, Christopher Geraci filed an action in federal district court against four defendants, including Women's Alliance and Stark County, for their handling of the events set forth above. On March 11, 2004, Christopher amended the complaint to only include Women's Alliance and Stark County. The amended complaint alleged three causes of action: negligent infliction of emotional distress; intentional infliction of emotional distress; and state and federal RICO claims. In November and December of 2005, Women's Alliance and Stark County filed motions for summary judgment. On June 29, 2006, the Court granted the De-

fendants' motions. *See Geraci I,* 436 F.Supp.2d 1022 (D.N.D.2006). The summary judgment order was appealed to the Eighth Circuit Court of Appeals. The appeal was deemed untimely and was summarily dismissed by the Eighth Circuit on February 21, 2007. *See* Case No. 1:03–cv–0129, Docket No. 93.

As to Women's Alliance, the Court found that Christopher Geraci failed to raise genuine issues of material fact that he had suffered the requisite bodily harm necessary to support his negligent infliction of emotional distress claim and that the conduct of the Crisis Center was extreme and outrageous, as required to support his intentional infliction of emotional distress claim. As to Stark County, the Court found that Christopher Geraci's claims for negligent infliction of emotional distress and intentional infliction of emotional distress were barred by discretionary immunity.

In January 2005, Heather Geraci and the children were finally found in Utah and were returned to Christopher Geraci. Heather was extradited to North Dakota to face criminal charges and she later pled guilty in state court to custodial interference.

On February 12, 2007, Christopher Geraci, as natural and custodial guardian and next friend of his minor daughters, S.G. and H.G., commenced another lawsuit and asserted nine causes of action against Women's Alliance and Stark County: negligent infliction of emotional distress; intentional infliction of emotional distress; unlawful interference with custodial rights; negligent supervision of employees; negligent hiring and failure to train; negligence by Stark County; negligence by Women's Alliance; vicarious liability; and assault and physical abuse. *See* Docket No. 1.

Women's Alliance contends that summary judgment is appropriate for the fol-lowing reasons: the intentional infliction of emotional distress claim is barred by collateral estoppel; Women's Alliance is not liable for negligence because it did not owe S.G. and H.G. a duty of care and its conduct was not the proximate cause of the children's injuries; there is not a common law basis for a claim of unlawful interference; and there is no factual basis for the claim of assault and physical abuse.

Stark County contends that summary judgment is appropriate because Christopher Geraci, as natural and custodial guardian and next friend of S.G. and H.G., is barred by collateral estoppel from relitigating the issue of discretionary immunity. Stark County also contends that the claims which were not pursued in *Geraci I* are barred by res judicata.

## II. STANDARD OF REVIEW

The Defendants have moved for summary judgment on all of the claims brought by Christopher Geraci as natural and custodial guardian and next friend of S.G. and H.G. Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and, therefore, the moving party is entitled to judgment as a matter of law. *Davison v. City of Minneapolis, Minn.,* 490 F.3d 648, 654 (8th Cir.2007); *see* Fed.R.Civ.P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.

The Court must inquire whether the evidence presents sufficient disagreement

to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law. *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir.2005). The moving party first has the burden of demonstrating an absence of genuine issues of material fact. *Simpson v. Des Moines Water Works*, 425 F.3d 538, 541 (8th Cir. 2005). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

## III. *LEGAL DISCUSSION*

It is well-established in the Eighth Circuit that the application of res judicata principles in a diversity action is a question of substantive law controlled by state common law. *Lane v. Sullivan*, 900 F.2d 1247, 1250 (8th Cir.1990); *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir.1997). North Dakota follows the general common law of res judicata.[1] "Res judicata is a term often used to describe such doctrines as merger, bar, and collateral estoppel, or the more modern terms of claim preclusion and issue preclusion." *Borsheim v. O & J Properties*, 481 N.W.2d 590, 596 (N.D.1992).

■ Res judicata, or claim preclusion, "prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which was resolved by final judgment in a court of competent jurisdiction." *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 383 (N.D.1992). The doctrine applies even if subsequent claims are based upon different legal theories. *Ungar v. North Dakota State Univ.*, 721 N.W.2d 16, 21 (N.D.2006). The Eighth Circuit has established a four prong test to determine the applicability of res judicata:

A claim will be held to be precluded by a prior lawsuit when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) both suits involve the same parties; and (4) both suits are based upon the same claims or causes of action. Furthermore, the party against whom res judicata is asserted must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect.

*Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir.1998).

■ For the purpose of res judicata, "only parties or their privies may take advantage of or be bound by the former judgment." *Hofsommer*, 488 N.W.2d at 383. "In general, privity exists if a person is so identified in interest with another that he represents the same legal right." *Gratech Co., Ltd. v. Wold Engineering, P.C.*, 729 N.W.2d 326, 331 (N.D.2007). "Fundamental fairness underlies any determination of privity." *Id.*

In this second lawsuit, Christopher Geraci, as natural and custodial guardian and next friend of S.G. and H.G., brings two claims against Women's Alliance and Stark County—negligent infliction of emotional distress and intentional infliction of emotional distress. These are identical claims that he brought on his own behalf in *Gera-*

---

1. The Defendants contend that Christopher Geraci's claims are barred by res judicata *and* collateral estoppel. Collateral estoppel, or issue preclusion, "generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit." *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 383 (N.D.1992). Although collateral estoppel is a branch of the broader law of res judicata, the doctrines are not the same. Res judicata is the more sweeping doctrine.

*ci I.* Christopher Geraci also brings, as natural and custodial guardian and next friend of S.G. and H.G., seven claims against Women's Alliance and Stark County that he did not bring on his own behalf in *Geraci I*: unlawful interference with custodial rights; negligent supervision of employees; negligent hiring and failure to train; negligence by Women's Alliance; negligence by Stark County; vicarious liability; and assault and physical abuse.

The doctrine of res judicata will prohibit the re-litigation of the negligent infliction of emotional distress claim and the intentional infliction of emotional distress claim if the four prong test set forth in *Costner* is satisfied. There is no question that the first two prongs have been met. The first lawsuit (*Geraci I*) resulted in a final judgment on the merits in the form of an order granting summary judgment, and was based on proper jurisdiction. With respect to the third prong, Christopher Geraci, as the father of S.G. and H.G., is so identified in interest with his minor daughters that he represents the same legal right. Therefore, the Court finds that privity exists between Christopher Geraci and his minor daughters and the children may be bound by the former judgment.

■ Regarding the "same claims or causes of action" prong, the preclusion of the second lawsuit depends on whether "its claims arise out of the same 'nucleus of operative facts as the prior claim.'" *Costner*, 153 F.3d at 673 (quoting *United States v. Gurley*, 43 F.3d 1188, 1195 (8th Cir.1994)). Christopher Geraci's claims in *Geraci I* arose out of the actions taken by the Defendants from the time Heather Geraci arrived at the Crisis Center in February 2003, until the time she left the Crisis Center with S.G. and H.G on July 24, 2003. The claims now being pursued by Christopher Geraci on behalf of S.G. and H.G. arise out of the exact same "nu-

cleus of operative facts." The only difference is that Christopher Geraci is now claiming injuries to his daughters, when previously he claimed injuries to himself. Because each element of the four prong test under *Costner* is satisfied, the Court finds that the claims for negligent and intentional infliction of emotional distress brought by Christopher Geraci, as natural and custodial guardian and next friend of S.G. and H.G., are barred by res judicata.

■ The doctrine of res judicata will also prohibit the seven new claims brought in this second lawsuit if the four prong test is met. Generally, "[c]ourts will not permit a litigant to try a part of his case and then, if he is disappointed with the outcome of the action, to have another day in court simply by alleging new claims or making a new demand for relief, when he could have made such demand in the prior action." *Perdue v. Knudson*, 179 N.W.2d 416, 421 (N.D.1970). As established above, *Geraci I* resulted in a final judgment on the merits and it was based on proper jurisdiction. It was also established that Christopher Geraci, as the father of S.G. and H.G., is so identified in interest with his minor daughters that he represents the same legal right. Therefore, S.G. and H.G. are Christopher Geraci's privies and may be bound by the judgment in *Geraci I*. Finally, it has been clearly established that this second lawsuit, including the seven new claims, arises out of the exact same nucleus of operative facts as were present in *Geraci I*.

There has been no indication that Christopher Geraci or his children have not had a full and fair opportunity to litigate their claims. The seven new claims could have been raised in *Geraci I*. Christopher Geraci cannot have another day in court merely by alleging new claims when such claims now being asserted could have been pursued in the prior action. Even if pursued

in the original lawsuit, the new claims would have met the same fate as the prior claims—based on discretionary immunity, failure to state a claim, or summary judgment as a matter of law. Because each of the elements required to warrant res judicata is satisfied as to the seven new claims brought by Christopher Geraci on behalf of S.G. and H.G., each of the new claims is barred by res judicata.

## IV. *CONCLUSION*

The Court finds that the claims brought by Christopher Geraci, as natural and custodial guardian and next friend of S.G. and H.G., are barred by the doctrine of res judicata. For the reasons set forth above, the Court **GRANTS** the Defendants' motions for summary judgment. (Docket Nos. 16 and 24.)

**IT IS SO ORDERED.**